**Christopher Nwafor NWANKWO,
Petitioner,**

v.

**Janet RENO, Attorney General of the
United States, Respondent.**

**No. 93 CV 2673 (ERK).**

United States District Court,
E.D. New York.

Aug. 10, 1993.

Henriette D. Hoffman, Atty.–In–Charge, Legal Aid Soc., Cr. Appeals Bureau, Federal Defenders Services Unit, New York City, for petitioner.

Zachary Carter, U.S. Atty., E.D.N.Y., Brooklyn, NY by Scott Dunn, Sp. Atty., for respondent.

## MEMORANDUM AND ORDER

KORMAN, District Judge.

Christopher Nwafor Nwankwo was arrested at John F. Kennedy Airport while attempting to import a substance containing 188.8 grams of a substance of which 35% was heroin. On September 20, 1991, after pleading guilty to the offense for which he was arrested, Mr. Nwankwo was sentenced to twenty-seven months imprisonment, three years supervised release and $50 special assessment.

Mr. Nwankwo completed serving his sentence on February 12, 1993, at which time he was transferred to the custody of the Immigration and Naturalization Service at the Federal Deportation Center at Oakdale, Louisiana to await deportation proceedings. These proceedings should have been commenced long before the expiration of his sentence if the Attorney General had complied with Section 701 of the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1252(i).

Section 701 directs the Attorney General to "begin any deportation proceeding as expeditiously as possible after the date of conviction." In *Soler v. Scott,* 942 F.2d 597, 600 (9th Cir.1991), *vacated as moot,* — U.S. ——, 113 S.Ct. 454, 121 L.Ed.2d 364 (1992), Judge Browning set out concisely the "single objective" that Congress sought to accomplish by the enactment of Section 701:

Congress enacted Section 701 ... to require the INS to abandon its practice of postponing prisoner deportation hearings until after the expiration of a prisoner's sentence. Rather than deporting aliens promptly upon the expiration of their prison sentence, the INS waited until a prisoner completed his or her sentence before even scheduling a hearing to determine whether the prisoner would be deported. These aliens remained in prison while awaiting their deportation hearing. Congress concluded this practice of keeping aliens in prison after they had completed their sentence contributed to prison overcrowding and imposed an unfair, unnecessary and expensive burden on limited federal and state resources. Congress enacted Section 701 to require the INS to begin deportation hearings as soon as possible after conviction so the question of deportation could be resolved before the prisoner's term expired, and if the prisoner was found deportable, deportation could be accomplished promptly.

The Immigration and Naturalization Service did not comply with Section 701 here,

just as it has ignored the intent of Congress in other cases. *Soler,* 942 F.2d at 600–601. Indeed, Mr. Nwankwo's initial deportation hearing was held on January 27, 1993, only sixteen days before the expiration of his sentence. Largely as result of this unexplained delay, "which, at a minimum, is contrary to the spirit of the law," *United States v. Restrepo,* 999 F.2d 640, 646–47 (2d Cir.), Mr. Nwankwo finds himself among the countless number of illegal aliens who are being incarcerated at Oakdale long after the service of their sentence at an enormous cost to the taxpayers. The circumstances that surround the detention of Mr. Nwankwo and others like him were recently described by the Court of Appeals for the Fifth Circuit:

> In the instant case (and in the cases of many of the detainees at Oakdale), the alien was (1) convicted of the kind of crime that made him deportable, (2), nevertheless served his entire prison sentence, (3) was then shipped to the federal holding center at Oakdale, (4) had a deportability hearing in which he was found deportable, and (5) languishes in Oakdale awaiting deportation. It appears to us that such lengthy delays have caused considerable expenditures of the very tax dollars that Congress was concerned about when it passed much of the subject legislation (not to mention the de facto extension of prison time beyond that for which such detainees have been sentenced). Compounding the expenditures that Congress was concerned with is the expense being borne by the Western District of Louisiana in processing the flood of habeas petitions being filed by the detainees who, by any fair reading of the statute, should long since have been deported.

*Emejulu v. Immigration and Naturalization Serv.,* 989 F.2d 771, 772 n. 1 (5th Cir.1993).

On June 6, 1993, during his fourth month of detention following the completion of his sentence, Mr. Nwankwo wrote a letter indicating that, as of May 14, 1993, he had abandoned all efforts to contest his deportation:

> "Without pretense, it will be very, very miserably heartbreaking, a move to leave behind, my young children and wife, all of them United States citizens to be deported. But I have accepted the unfaithful circumstance that I cannot change. In view of all these, however, I have immensely and desperately pleaded with the (INS) to deport me in-order to rejoin my 74 year-old ailing mother and also make all alternative plans to bring my children and wife home into the country that they know little or nothing about."

The letter was treated as a petition for a writ of habeas corpus pursuant to 8 U.S.C. § 1252(c), which provides that "the Attorney General shall have a period of six months" from the date of a final order of deportation "within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained [or] released on bond...." Section 1252(c) goes on to provide a remedy for the failure of the Attorney General to proceed with reasonable dispatch in effectuating an alien's departure from the United States:

> Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention ... during such six-month period upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period.

The United States Attorney moves to dismiss the petition on the ground that a district court may not entertain a habeas corpus action unless it has jurisdiction over the custodian of the prisoner. *See Iheme v. Reno,* 819 F.Supp. 1192, 1196 (E.D.N.Y.1993); *Nwankwo v. Reno,* 819 F.Supp. 1186, 1191–92 (E.D.N.Y.1993). Although petitioner is in the custody of the Attorney General, the United States Attorney argues that the custodian of the prisoner is the jailer who has day-to-day control of the prisoner. *Guerra v. Meese,* 786 F.2d 414, 416 (D.C.Cir.1986).

 There are compelling reasons of policy why the Attorney General should not normally be regarded as the custodian of a

habeas petitioner. If the Attorney General is deemed to be the custodian, it would mean that the Department of Justice could be required to transport prisoners to a judicial district far from their place of confinement for no apparent reason. By compelling the petition to be filed in a district court to which the jailer is amenable to process, the case law ensures that the underlying concern of Congress will not be undermined.[1] See Braden v. 30th Judicial Circuit of Kentucky, 410 U.S. 484, 496, 93 S.Ct. 1123, 1130, 35 L.Ed.2d 443 (1973).

While the general rule may be sound as a matter of policy, the language of the habeas corpus statute does not compel rigid adherence to it in every case. Title 28 U.S.C. § 2243, provides that writ of habeas corpus be "directed to the person having custody of the person detained." Section 2243 "does not define 'custody' or specify who the person having 'custody' will be. Nowhere does the statute speak of an 'immediate custodian' or intimate that an action must necessarily be instituted in the location of such an 'immediate custodian.'" Eisel v. Secretary of the Army, 477 F.2d 1251, 1258 (D.C.Cir.1973). We do know, however, that "[t]he habeas corpus jurisdiction statute implements the constitutional command that the writ of habeas corpus be made available." Jones v. Cunningham, 371 U.S. 236, 238, 83 S.Ct. 373, 374, 9 L.Ed.2d 285 (1963). Construing Section 2243 with this purpose in mind, it seems clear that the Attorney General should be deemed the custodian here.

■ The Attorney General is plainly the legal custodian of the petitioner. See Frazier v. United States, 339 F.2d 745, 746–47 (D.C.Cir.), cert. denied, 379 U.S. 948, 85 S.Ct. 446, 13 L.Ed.2d 545 (1964). Indeed, the very act of Congress pursuant to which this action is commenced, 8 U.S.C. § 1252(c), explicitly authorizes the review of the "determination of the Attorney General concerning detention." While she may have delegated to her subordinates physical custody of petitioner as well as the determination concerning his detention, the Attorney General is an appropriate respondent in a habeas corpus proceeding because she has the power to direct her subordinates to carry out any order directed to her to produce or release the petitioner. See Ex Parte Endo, 323 U.S. 283, 304–05, 65 S.Ct. 208, 219, 89 L.Ed. 243 (1944).

These considerations alone distinguish this case from cases such as Guerra, 786 F.2d at 416 (D.C.Cir.1986), and Billiteri v. United States Bd. of Parole, 541 F.2d 938 (2d Cir. 1976), which held that the Parole Board is not "the custodian of a prisoner who is under the control of a warden and confined in a prison, and who is seeking, in a habeas corpus action, to be released from precisely that form of confinement." Billiteri, 541 F.2d at 948. There are extraordinary additional considerations, however, that suggest that the Attorney General must be deemed to be the appropriate respondent in this case. Only recently, the Court of Appeals for the Fifth Circuit observed that, although "the district and magistrate judges of the Western District of Louisiana are toiling long and hard to process the torrent of habeas petitions flowing from the Oakdale facility as a result of lengthy delays in processing detainees for deportation," the "atypical and unanticipated volume of habeas corpus petitions ... is beyond the capability of the district court to process in a timely fashion." Emejulu, 989 F.2d at 772.

Under these circumstances, a transfer of the case to the Western District of Louisiana may deny petitioner any meaningful habeas corpus relief. Indeed, if the position of the Attorney General is sustained, it will mean that she could seriously undermine the remedy of habeas corpus by detaining illegally a large group of persons in one facility so that the resulting "torrent of habeas corpus petitions" would overwhelm the district and magistrate judges of the local United States District Court. Such an absurd result is not dictated either by precedent or the language of 28 U.S.C. § 2243. On the contrary, the cases holding that the petitioner's jailer should be regarded as the custodian, and that "only courts having jurisdiction over the warden of a penitentiary can grant a writ of habeas corpus on behalf of any of its in-

---

1. This concern is not implicated here because the underlying facts are not disputed and there is no need for a hearing for which petitioner will have to be transported from Louisiana to New York.

mates," recognize that the result "is a practical one based on common sense administration of justice" which may yield in limited and special circumstances. *Sanders v. Bennett,* 148 F.2d 19, 20 (D.C.Cir.1945); *Ex Parte Hayes,* 414 U.S. 1327, 94 S.Ct. 23, 38 L.Ed.2d 200 (1973) (Douglas, J. in chambers); *Demjanjuk v. Meese,* 784 F.2d 1114, 1116 (D.C.Cir.1986) (Bork, J. in chambers); *Guerra,* 786 F.2d at 416 n. 1; *cf. Eisel,* 477 F.2d at 1254 ("where inactive reservists may or may not bring *habeas* actions is better determined by analyzing the policies for and against allowing an action in a particular jurisdiction, rather than by blind incantation of words of words with implied magical properties, such an 'immediate custodian' ").

■ The conclusion that the Attorney General may be the appropriate custodian under the unusual circumstances here does not resolve completely the jurisdictional objection raised by the United States Attorney. There remains to be resolved the issue whether the Attorney General may be required to respond to the petition in the Eastern District of New York. Title 28 U.S.C. § 2241(a) authorizes United States district court judges to issue writs of habeas corpus "within their respective jurisdictions." This clause requires only that "the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction'. . . ." *Braden,* 410 U.S. at 495, 93 S.Ct. at 1129; *United States ex rel. Sero v. Preiser,* 506 F.2d 1115, 1128 (2d Cir.1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975) ("jurisdictional grant in § 2241(a) . . . construed as coextensive with scope of service or process, *see* Fed.R.Civ.P. 4(f) . . .").

F.R.Civ.P., Rule 4(f), provides that "[a]ll process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state." Because the Attorney General is not present personally in New York State to receive service of process, jurisdiction cannot be obtained over her unless there is some basis for service of process

outside the State of New York. While Rule 4(f) "preserves the basic rule that federal process must be served within the territory of the state in which the federal court sits, it now expressly authorizes service beyond those limits when permitted 'by these rules.' The reference to 'by these rules' obviously includes Rules 4(c)(2)(C)(i) and 4(e) and makes it clear that extraterritorial service pursuant to state law under either of those provisions does not transgress Rule 4(f)." 4A Charles A. Wright & Arthur R. Miller, *Federal Practice Procedure:* § 1113 at 239 (1987).

■ F.R.Civ.P., Rule 4(e), permits service "upon a party not an inhabitant or found within the state in which the district court is held" to be made to the extent permitted by "a statute or rule of court of the state in which the district court is held" if there is no "statute of the United States or an order of the court thereunder" that provides for the service of a summons on a party not an inhabitant. Because Rule 4(e) is applicable in a federal question subject matter jurisdiction context, 4A Charles A. Wright & Arthur R. Miller, *Federal Practice Procedure* § 1113 at 240 (1987), and because the habeas corpus statute, 28 U.S.C. § 2241 et seq., "does not provide a means for service of process, a federal court may exercise personal jurisdiction over a non-resident of the state in which the court sits to the extent authorized by the law of that state." *Bane v. Netlink,* 925 F.2d 637, 639 (3d Cir.1991).

■ Under New York law, a non-resident who transacts business in New York may be served with process outside the State of New York on a cause of action that does not have any nexus with New York. *See* Commentary, N.Y.Civ.Prac.L. & R. § 301, Practice Commentaries (McKinney 1990); *ABKCO Indus. v. Lennon,* 52 A.D.2d 435, 384 N.Y.S.2d 781 (First Dep't 1976); *Forgash v. Paley,* 659 F.Supp. 728, 730 (S.D.N.Y.1987) (Weinfeld, J.); *Cf. Klinghoffer v. S.N.C. Achille Lauro Ed Altrigestione Motonave Achille Lauro In Amministrazione Straordinaria,* 937 F.2d 44, 50 (2d Cir.1991). Because the Attorney General, in her official capacity, clearly transacts business in New York, personal jurisdiction over her may be obtained

in a proceeding pursuant to 28 U.S.C. § 2241 by extraterritorial service of process.

 In holding that jurisdiction upon the Attorney General may be obtained in the Eastern District of New York pursuant to F.R.Civ.P., Rule 4(e), I am not unmindful of the holdings of the Supreme Court that emphasize that procedural rules and statutes relating to civil cases generally should not automatically be applied to habeas corpus cases. *Harris v. Nelson,* 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969); *Schlanger v. Seamans,* 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 998 n. 4, 28 L.Ed.2d 251 (1971). Nevertheless, where Congress has been largely silent, "courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage. Where their duties require it, this is the inescapable obligation of the courts." *Harris v. Nelson,* 394 U.S. 286, 299, 89 S.Ct. 1082, 1090, 22 L.Ed.2d 281 (1969); *United States ex rel. Sero v. Preiser,* 506 F.2d 1115, 1125–26 (2d Cir.1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975). While it would surely place an undue burden on prison officials if a federal prisoner could file a habeas corpus petition in any district in the United States, the Great Writ would be undermined if a petitioner was compelled to commence a habeas corpus proceeding in a district court in which he could not obtain relief in a timely fashion.

In the opening part of his opinion in *Harris v. Nelson,* Justice Fortas wrote:

The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its pre-eminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended * * *." U.S. Const., Art. I, § 9, cl. 2. The scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously

guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.

394 U.S. at 290–91, 89 S.Ct. at 1086.

In the present case, petitioner has filed a habeas corpus petition alleging that he is being incarcerated beyond the period of time to which he was sentenced pursuant to a judgment entered in the Eastern District of New York. In holding that the Attorney General may be required to justify this extended incarceration in the judicial district in which the body of the petitioner was given over to her, I do no more than administer the writ "with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."[2] Accordingly, the motion to dismiss the petition is denied.

SO ORDERED.

---

**2.** While the foregoing discussion has focused on the issue of personal jurisdiction, the same equitable considerations resolve any question relating to the propriety of venue. *See United States ex rel. Sero v. Preiser,* 506 F.2d 1115, 1130 n. 11 (2d Cir.1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975).