**Liu Di WANG et alia, Plaintiffs,**

v.

**Janet RENO et alia, Defendants.**

**No. CV–93–5523 (CPS).**

United States District Court,
E.D. New York.

Sept. 6, 1994.

Bruno Joseph Bembi, Hempstead, NY, for plaintiffs.

Zachary W. Carter, U.S. Atty., E.D.N.Y. Brooklyn, NY by Scott Dunn, Richard Molot, for defendant.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

In this action challenging the standard used by the Board of Immigration Appeals ("BIA") to evaluate asylum applications based on coercive family planning practices, plaintiffs seek declaratory, injunctive, mandamus, and habeas relief. Plaintiffs also seek a temporary restraining order, a preliminary injunction, class certification, and leave to supplement their pleadings and add additional parties. The Attorney General opposes these motions and has filed a motion to dismiss contending that this Court lacks subject matter jurisdiction to provide the relief sought. For the reasons discussed below, the Attorney General's motion to dismiss is granted except as to those two plaintiffs who are located within the Eastern District of New York and have received final orders of exclusion. All other motions are denied with leave to refile.

## BACKGROUND

Plaintiffs are citizens of the People's Republic of China (the "PRC") who are in various stages of the process of seeking asylum and orders withholding deportation under the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.* (the "INA"), based on what they contend are the coercive family planning practices of the PRC. The original complaint was filed on behalf of ninety-seven plaintiffs. Of those ninety-seven, eleven were residing in the Eastern District of New York and one, plaintiff Chen, Xiu Qin, a.k.a. Chen, Xie Xing ("Chen") (Chinese names are hereinafter given in the Chinese style, with family name prior to first name), was being held here in the Wackenhut detention facility in Springfield Gardens, Queens. At the time the complaint was filed, the majority of the plaintiffs either resided or were being detained within the Southern District of New York; the rest were located in eight states and Peru.[1] Plaintiffs also seek to add a total of sixty-nine additional plaintiffs to the action, forty-three of whom resided in the Eastern District and one, Zhou, Shan Bin ("Zhou"), who was being detained here.[2]

---

1. Fifty-two of the plaintiffs reside in the Southern District of New York, and two are being detained there in the Varick Street facility. A third plaintiff, Lin, Yu, on whose behalf a motion to compel release had been filed, was also being held at Varick Street. As described *infra*, he has since been released. Plaintiffs are also being detained in Pennsylvania (ten), Louisiana (eight), Virginia (five), California (two) and Missouri (one). Florida, Massachusetts, New Jersey and Peru are each the residence of one plaintiff.

2. Those sixty-nine individuals were named in four different submissions. The complete list of individuals seeking to be added as plaintiffs is provided in plaintiffs' "Motion to Add Parties to the Pleadings," filed on May 12, 1994. Of those not located in the Eastern District, three plaintiffs were being detained in the Southern District and the rest were residing there.

According to plaintiffs, as of May 17, 1994, thirty-three of the individuals named in both the initial complaint and the various submissions seeking to add additional parties had been issued final orders of exclusion. Of those thirty-three, only two, Zhou and Chen, were located in the Eastern District. Five of the thirty-three, including Liu, Yau Gwong ("Liu"), were located in the Southern District. Liu filed a habeas petition along with the original complaint. During the course of this action, both Chen and Zhou filed habeas petitions. With the exception of those presenting habeas petitions, plaintiffs have not provided any description of the circumstances of their entry, parole or detention.

Chen is a twenty-nine year old citizen of the PRC who arrived at Kennedy International Airport seeking entry into the United States on July 31, 1993. She was taken into INS custody and placed in exclusion proceedings. She contends that she fled the PRC "fearing continuing repercussions, after having suffered (with her husband) threats and demands of sterilization, as well as being pursued and subjected to harsh economic sanctions." Memo In Support, *Chen v. Slattery*, CV 94 2568 (CPS). She alleges that the local government in the PRC closed down her family hairdressing business as a result of her opposition to the PRC's birth control policy. After her arrival in the United States, her request for asylum was denied by an immigration judge on October 26, 1993, and her appeal to the BIA was dismissed on March 14, 1994.

According to his habeas petition, Zhou is a citizen of the PRC who sought entry into the United States on July 19, 1993. In his initial asylum application, he contended that he was involuntarily sterilized after the birth of his second child. However, the sterilization was apparently unsuccessful and his wife became pregnant again. During that pregnancy, she attempted to avoid detection. When she was discovered, local officials threatened to subject her to an immediate abortion. Zhou and his wife ultimately paid a large fine to avoid the abortion, and the child was born. Ten days later, Zhou left the country, afraid that

he would be sterilized against his will. After arriving in the United States, his request for asylum was denied by an immigration judge on November 5, 1993, and his appeal to the BIA was dismissed on April 6, 1994.

According to his habeas petition, Liu is a thirty-one year old native of the PRC from the Fouzhou Province who was a farmer and a tile or brickmaker. After traveling to Burma and Thailand, Liu boarded the *Golden Venture* in an attempt to reach the United States. He was arrested in the Eastern District of New York after that vessel ran aground in the waters off Queens, New York on June 6, 1993.[3] Liu asserts that he left the PRC to avoid sterilization. His asylum application was denied by an immigration judge on August 9, 1993, and on November 3, 1993, the BIA dismissed his appeal of that denial.

The heart of plaintiffs' suit is a challenge to the reasonableness and the applicability of the decision of the BIA in *Matter of Chang*, Int. Dec. 3107 (BIA May 12, 1989), 1989 WL 247513 (B.I.A.), in which the Board found that the PRC's "one couple, one child" family planning policy did not include officially-sanctioned mandatory sterilization and was not "on its face persecutive." The BIA noted that the policy could be implemented in a way that would serve as a basis for asylum under the INA but stated that "[t]o the extent ... that such a policy is solely tied to controlling population, rather than as a guise for acting against people protected by the Act, we cannot find that persons who do not wish to have the policy applied to them are victims of persecution or have a well-founded fear of persecution within the present scope of the Act."

In addition, the BIA stated that, even if an asylum-seeker could show that he would be forced to undergo mandatory sterilization, that evidence, by itself, would not be sufficient to establish a well-founded fear of persecution under the terms of the INA because the alien would not have shown that he was treated differently from other citizens or that the application of the policy in his case was actually an attempt to achieve an end other

---

3. For details on the grounding of the *Golden Venture* and the ensuing events, *see Matter of G——*, Int.Dec. (BIA Dec. 8, 1993) 3215, 1993 WL 522159 (B.I.A.).

than the legitimate governmental goal of general population control.

In reaching that determination, the BIA specifically declined to follow the reasoning of an August 5, 1988 memorandum of the Attorney General issued to the Commissioner of the INS which directed that "INS asylum adjudicators" give "careful consideration" to the asylum applications of PRC nationals who refused to abort a pregnancy or undergo sterilization as an "act of conscience."[4] The BIA held that it was not bound by the policy directives of the Attorney General.

Plaintiffs' challenge to *Chang* is based on the response of the Executive and Legislative Branches to the decision. In an explicit attempt to overrule *Chang*, Congress added the Armstrong–DeConcini Amendment to the Emergency Chinese Immigration Relief Act of 1989 (H.R. 2712), a bill which grew out of the events in Tiananmen Square in June of 1989. *See generally Di v. Carroll*, 842 F.Supp. 858, 863 (E.D. Va. Jan. 14, 1994). Congress passed the bill, with the Armstrong–DeConcini Amendment, at the end of November 1989.[5] *Id.* Although President Bush rejected the bill through a pocket veto, he directed the Attorney General to give "enhanced consideration" under the immigration laws to "individuals from any country who express a fear of persecution upon return to their country related to that country's policy of forced abortion or coerced sterilization." *Memorandum of Disapproval for the Emergency Chinese Immigration Relief Act of 1989*, 25 Weekly Compilation of Presidential Documents at 1853–54 (1989). Pl.Ex. B.

In January 1990, then Attorney General Thornburgh promulgated an interim rule (the "January 1990 Interim Rule") and had it published in the Federal Register with requests for comments. *See* 55 Fed.Reg. 2803 (1990). That rule, Interim Rule 2803, became effective on January 29, 1990, and amended 8 C.F.R. § 208.5 as it then read to provide:

(a) Burden generally. . . .

(b) Related to coercive family planning policies. . . .

(1) Aliens who have a well-founded fear that they will be required to abort a pregnancy or to be sterilized because of their country's family planning policies may be granted asylum on the ground of persecution on account of political opinion.

(2) An applicant who establishes that the applicant (or the applicant's spouse) has refused to abort a pregnancy or to be sterilized in violation of a country's family planning policy, and who has a well-found-

---

**4.** Then Attorney General Meese directed that—

all INS asylum adjudicators are to give careful consideration to applications from nationals of the People's Republic of China who express a fear of persecution upon return to the PRC because they refuse to abort a pregnancy or resist sterilization after the birth of a second or subsequent child in violation of the Chinese Communist Party directives on population. If such refusal is undertaken as an act of conscience with full awareness of the urgent priority assigned to that policy by high level PRC officials and local party cadres at all levels as well as of the severe consequences which may be imposed for violation of the policy, it may be appropriate to view such refusal as an act of political defiance sufficient to establish refugee status under 8 U.S.C. § 1101(a)(42)(A). Indeed there is evidence to support the assertion that such an act is viewed by PRC officials as 'political dissent.' Therefore, a finding of the requisite 'well-founded fear of persecution' under these circumstances is reasonable.

Memorandum for Alan C. Nelson, Commissioner Immigration and Naturalization Service From Edwin Meese III. (August 5, 1988). Pl.Ex. A.

**5.** The Act provided, in part, as follows:

Sec. 3 STANDARDS TO BE APPLIED IN ADJUDICATING APPLICATIONS FOR ASYLUM, WITHHOLDING OF DEPORTATION, AND REFUGEE STATUS FROM CHINESE FLEEING COERCIVE POPULATION CONTROL POLICIES.

(a) IN GENERAL—With respect to the adjudication of all applications for asylum, withholding of deportation, or refugee status from nationals of China filed before, on, or after the date of the enactment of this Act, careful consideration shall be given to such an applicant who expresses a fear of persecution upon return to China related to China's "one couple, one child" family planning policy. If the applicant establishes that such applicant has refused to abort or be sterilized, such applicant shall be considered to have established a well-founded fear of persecution, if returned to China, on the basis of political opinion consistent with paragraph (42)(A) of section 101(a) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)).

Emergency Chinese Immigration Relief Act of 1989 (H.R. 2712).

ed fear that he or she will be required to abort the pregnancy or to be sterilized or otherwise persecuted if the applicant were returned to such country may be granted asylum.

*Id.*

On April 11, 1990, President Bush issued Executive Order 12,711 directing the Attorney General to take certain steps to slow or stop the deportation or exclusion of PRC nationals from the United States. The order also directed the Attorney General and the Secretary of State to "provide for enhanced consideration under the immigration laws for individuals" who expressed a fear·of persecution on return to their homelands due ·to policies of forced abortion or coerced sterilization "as implemented by [the January 1990 Interim Rule]." [6] Executive Order 12,711 of April 11, 1990, published on April 13, 1990 at 55 Fed.Reg. 13897 (1990).

In July 1990, Attorney General Thornburgh published a final rule which established the procedures to be used in determining asylum under section 208 and withholding of deportation under section 243(h) of the INA, as amended by the Refugee Act of 1980. *See* 55 Fed.Reg. 30674 (July 27, 1990) (the "July 1990 Final Rule"). The July 1990 Final Rule, however, made no mention of the January 1990 Interim Rule. It also changed sections of the C.F.R. which had been amended by the January 1990 Interim Rule so that the regulations concerning asylum procedures made no mention of coercive family planning practices. The July 1990 Final Rule eliminated the January 1990 Interim Rule without explanation.

Subsequent events illustrate the confusion this engendered. In April 1991, the Chief Attorney Examiner of the BIA made a written inquiry to the Appellate Counsel of the INS requesting the position of the INS on the status of the January 1990 Interim Rule in light of the July 1990 Final Rule. *See* Pl.Ex. H. The Appellate Counsel responded

that the January 1990 Interim Rule had not been amended or repealed and that the interim regulation remained the policy of the INS. *See* Pl.Ex. I. In a memorandum to Regional Counsel and District Counsel dated November 7, 1991, the Office of the General Counsel of the INS stated that Department of Justice and INS "policy with respect to aliens claiming asylum or withholding of deportation based upon coercive family planning policies is that the application of such coercive policies does constitute persecution on account of political opinion" and directed that INS trial attorneys act accordingly. *See* Pl.Ex. J.

In January 1993 the Attorney General signed a final rule (the "January 1993 Rule"), similar to the January 1990 Interim Rule, which overruled *Chang*. The January 1993 Rule incorporated comments made on the January 1990 Interim Rule and then amended the regulations so an applicant (and the applicant's spouse, if also applying) would be found to be a refugee on the basis of political opinion if the applicant could establish that

> pursuant to the implementation by the country of the applicant's nationality or last habitual residence of a family planning policy that involves or results in forced abortion or coerced sterilization, the applicant has been forced to abort a pregnancy or to undergo sterilization or has been persecuted for failure or refusal to do so, and that the applicant is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such persecution.

The January 1993 Rule also provided that an applicant (and the applicant's spouse, if also an applicant) would be

> found to be a refugee on the basis of a well-founded fear of persecution on account of political opinion if the applicant establishes a well-founded fear that, pursuant to the implementation by the country of the applicant's nationality or last habitual residence of a family planning policy that involves or results in forced abortion

---

**6.** The Executive Order stated:
The Secretary of State and the Attorney General are directed to provide for enhanced consideration under the immigration laws for individuals from any country who express a fear of persecution upon return to their country relat-

ed to that country's policy of forced abortion or coerced sterilization, as implemented by the Attorney General's regulation effective January 29, 1990.
Executive Order 12,711 of April 11, 1990.

or coerced sterilization, the applicant will be forced to abort a pregnancy or undergo sterilization or will be persecuted for failure or refusal to do so, and that the applicant is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear.

The January 1993 Rule was signed by the Attorney General in the last few days of the Bush Administration. It was then sent to the Federal Register where it was made available for public inspection. The January 1993 Rule was scheduled for publication on January 25, 1993.

However, the status of the January 1990 Interim Rule and the effect of Executive Order 12,711 were not to be so easily resolved. Immediately after President Clinton was inaugurated on January 22, 1993—three days before the scheduled publication of the January 1993 Rule—the proposed director of the Office of Management and Budget issued a directive which prohibited the publication of any new regulation that was not approved by a Clinton-appointed agency head. As a result, the January 1993 Rule was not published.

In December 1993 two cases of individuals seeking asylum based on the population control practices of the PRC were referred by the BIA to the Attorney General for her review pursuant to 8 C.F.R. § 3.1(h)(1)(ii) to resolve the conflict between Executive Order 12,711 and *Chang*. The Attorney General declined to resolve the conflict, stating that "[a]fter review, it is apparent that the BIA's decisions in these cases do not require a determination that one or the other of these standards is lawful and binding." *See* Plaintiff's Motion to Supplement Pleadings and for Class Action Petition for Class–Wide Writ of Habeas Corpus Motion to Add Parties.

Plaintiffs now seek to compel the INS and the Executive Office for Immigration Review ("EOIR")[7] to follow the January 1990 Interim Rule and Executive Order 12,711 on the grounds that the INS and the EOIR are both bound by those orders. Plaintiffs contend that the January 1990 Interim Rule could not have been changed without notice, a com-

ment period, and publication in the Federal Register, and thus any subsequent rule is in violation of the Administrative Procedures Act and void. In addition, plaintiffs argue that, even if the January 1990 Interim Rule is not a substantive rule, it should be considered a statement of general policy or an interpretation of general applicability, and the failure to publish the repeal, revision or amendment of the January 1990 Interim rule is a violation of the Freedom of Information Act.

Plaintiffs assert that until the summer of 1993 the INS and EOIR had a general policy of granting requests for asylum based on fears of implementation of the PRC's family planning policy. Plaintiffs have provided affidavits from a number of immigration attorneys which, in general, state that after the summer of 1993 immigration judges switched from granting asylum to applicants from the PRC to denying it in light of *Chang*. The affidavits also allege that INS attorneys changed their practice from routinely recommending asylum for PRC applicants to opposing asylum claims. The result was longer hearings and fewer grants of asylum. *See* Pl.Exs. P, Q, R, S, T, U, V; Pl.Ex. K. (January 19, 1993 "Legal Opinion" sent to the Director of the Office of International Affairs, the Asylum Branch and Regional and District Counsel from the Office of the General Counsel, indicating that Interim Rule was still in effect); Pl.Ex. W (article by former INS General Counsel stating that INS trial attorneys disregarded policy directives not to appeal decisions of immigration judges granting asylum). Plaintiffs contend that the change in "policy" is void because it is not in compliance with either Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552 (1988), or plaintiffs' due process rights. Plaintiffs also contend that *Chang* violates the 1980 Refugee Act.

Plaintiffs seek a judgment declaring that the INS' present policy governing the matter is null and void for failure to follow the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, and the FOIA, pursuant to 28 U.S.C. §§ 2201 and 2202, Fed.R.Civ.P. 57, and an order permanently enjoining the INS

---

7. The EOIR has general supervisory power over the BIA. *See* 8 C.F.R. §§ 3.0, 3.1.

and the EOIR from implementing any new policy or rule governing asylum claims based on family planning practices. Plaintiffs seek an order of mandamus pursuant to 28 U.S.C. § 1361 compelling the defendants to follow Executive Order 12,711 and Interim Rule 2803 and to order the defendants to reopen and readjudicate, under Executive Order 12,-711 and the January 1990 Interim Rule, the applications of the plaintiffs who have been denied asylum.

In addition, plaintiffs seek a stay of the orders of deportation or exclusion of those plaintiffs who have received a final order of deportation or exclusion following the dismissal of their appeal to the Board of Immigration Appeals, pursuant to 28 U.S.C. §§ 1361, 1651, and 2202 and Fed.R.Civ.P. 57 and 65.

Plaintiffs also sought an order directing the INS to conduct an asylum-prescreening interview for plaintiff Lin, Yu ("Lin"), and an order directing the INS to issue advance parole for plaintiff Huang, Nen Nendi ("Huang") so that he may reapply for asylum or continue with his appeal. Huang was deported while his appeal was pending with the BIA. *See* Pl.Ex. Y. Both of these requests have been withdrawn by plaintiffs after defendants agreed to provide the relief requested. *See* Stipulation, Ex. 2 to Gov't Memorandum of Law in Support of Defendants' Motion to Dismiss and In Opposition to Plaintiffs' Motions for a Preliminary Injunction and Class Certification and to Supplement the Pleadings and Add Parties ("Gov't Response"). After that stipulation was signed, plaintiff Lin was granted asylum by an immigration judge and was subsequently released from detention, rendering his motion to compel release moot.

Plaintiffs also seek to supplement their pleadings to modify their claims for relief and include additional allegations with regard to the Attorney General's opinion that declined to resolve the conflict between Executive Order 12,711 and *Chang*. In support of their application to supplement their pleadings, plaintiffs contend that material sought to be added to the second claim for relief benefits the defendants' defenses rather than the plaintiffs' claims, and the information regarding the Attorney General's decision does nothing more than show that Executive Order 12,711 and *Chang* are in conflict.

In support of the motion for class certification, plaintiffs have provided eight different class definitions which include alternatives of nationwide class certification, statewide class certification or class certification for just those named in either the complaint or the petition for habeas corpus filed with the complaint who have received final orders of exclusion. Plaintiffs assert that the following are the significant questions of law common to all members of the class:

(a) whether [the January 1990 Interim Rule] which provides eligibility for asylum based on coercive family planning policies, is a substantive rule binding on both the Immigration and Naturalization Service and the Executive Office for Immigration Review;

(b) whether [January 1990] Interim Rule as an interpretive rule or general statement of policy was binding on the INS;

(c) whether Executive Order 12,711 is binding on the INS and EOIR;

(d) whether the Department of Justice violated the APA by repealing the Interim Rule 2803 without a notice and comment period;

(e) whether the Department of Justice violated the Freedom of Information Act ("FOIA") by failing to "currently" publish the repeal of Interim rule 2803;

(f) whether the INS violated the APA and the FOIA by failing to publish in the Federal Register a change in its policy of recommending approval of asylum applications based on coercive family planning policies; and

(g) whether *Chang* violated the 1980 Refugee Act.

While plaintiffs concede that an alien who has received a final order of exclusion is generally limited to judicial review through habeas corpus proceedings and not otherwise, plaintiffs contend that their complaint is based on an allegation that the entire asylum program is being implemented in an improper fashion and is the product of systemic abuses and therefore falls within an

exception to the general rule. Plaintiffs also seek certification of a habeas corpus subclass.

The Attorney General has filed a motion to dismiss, contending that the failure of plaintiffs to exhaust the available administrative remedies prevents this Court from exercising subject matter jurisdiction over the complaint. The Attorney General contends that the issues raised by plaintiffs may receive full and complete consideration in the context of ordinary habeas review of any individual alien's order of exclusion pursuant to 8 U.S.C. § 1105a(b). The Attorney General further contends that, even if this Court were to assume jurisdiction over the complaint, the Attorney General's decision in *Chang* is entitled to significant deference and is a reasonable decision which has not been overridden by regulation, executive order or by any failure to publish notice of changed policies.

The Attorney General also argues that this Court lacks jurisdiction over the writ of habeas corpus filed by Liu since Liu's true custodian is located outside the Eastern District of New York. In the alternative, the Attorney General contends that even if the Court has jurisdiction the writ should not issue because the final order issued to Liu is based on evidence which is reasonable, substantial and probative.

The Attorney General opposes the issuance of a preliminary injunction on the grounds that plaintiffs have not shown a likelihood of achieving success on the merits or raised substantial questions going to the merits. The Attorney General further contends that plaintiffs cannot demonstrate irreparable harm since without an injunction they would still be able to seek stays of deportation by filing habeas petitions on behalf of individual petitioners in the Districts where they are being detained.

Finally, the Attorney General opposes the motion for class certification, contending that the Court lacks jurisdiction to issue class-wide relief because the Court must review individual habeas petitions. The Attorney General also argues that class certification is inappropriate because asylum claims are of an individual nature.

At a status conference on February 22, 1994, the Court denied plaintiffs' request for a restraining order on behalf of all plaintiffs and potential class members but ordered that the INS not deport named plaintiffs who had been issued final orders of exclusion as of February 22, 1994. Plaintiffs have now renewed their request for a TRO to prevent the deportation of all nationals of the PRC in light of the decision in *Yi v. Maugans,* 24 F.3d 500, 503–04 (3rd Cir.1994), which affirmed a district court's denial of a motion for class certification for PRC nationals seeking asylum who were challenging *Chang* on the same grounds as asserted here. The Attorney General opposes that request, contending that plaintiffs' have failed to show that they have a likelihood of success on the merits and that the Court's ruling on the earlier request for a TRO should not be disturbed since plaintiffs have not provided any new facts or law supporting their position.

## DISCUSSION

█ In general, judicial review of exclusion and deportation proceedings under the INA is limited. Only an alien who has exhausted the administrative remedies available to him or her may seek review of a final order of exclusion, and then only by filing a habeas corpus petition. *See* 8 U.S.C. § 1105a(b) ("[A]ny alien against whom a final order of exclusion has been made ... may obtain judicial review of such order by habeas corpus proceeding and not otherwise."); 8 U.S.C. § 1105a(c) ("An order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws or regulations....."); *Yi,* 24 F.3d at 503–04. Final orders of deportation may only be reviewed by the Courts of Appeals. 8 U.S.C. § 1105a(a).

█ Thirty-three of the named plaintiffs and individuals sought to be added have been issued final orders of exclusion, and only two of those are being detained in the Eastern District and five in the Southern District. Normally, an alien must first appeal an adverse decision of an immigration judge to the

BIA before seeking judicial review. *See Yi,* at 507–08; *Alleyne v. United States Immigration & Naturalization Service,* 879 F.2d 1177 (3d Cir.1989) (Under § 1105a(c), no judicial review unless there has been an appeal to the BIA and an affirmation of the immigration judge's decision).

 Courts have, however, created exceptions to the general rule of requiring exhaustion when the claim is based on "an alleged pattern and practice of constitutional or statutory violations" rather than a challenge to an individual order of exclusion and deportation. *El Rescate Legal Serv. v. Executive Office,* 959 F.2d 742, 746 (9th Cir.1991). Plaintiffs rely heavily on *McNary v. Haitian Refugee Center, Inc.,* for the proposition that claims which are procedural, rather than substantive, may be brought outside the normal appeals process without satisfying the exhaustion requirement. 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). In *McNary,* the Supreme Court held that section 210(e) of the INA,[8] which foreclosed review in the district courts of denials of "Special Agricultural Worker" ("SAW") status, did not preclude jurisdiction under 28 U.S.C. § 1331 for review of allegations of a pattern or practice of procedural due process violations by the INS. The Court held that, "because the administrative appeals process does not address the kind of procedural ... claims respondents bring in this action," limiting judicial review was not appropriate.

In *McNary,* however, the Supreme Court emphasized that the procedures being challenged prevented an alien from making an adequate record for appeal, and the allegations made were ones that could be established only be showing a pattern across cases rather than the events occurring in a single case. *See McNary,* 498 U.S. at 496–497, 111 S.Ct. at 898–899. The Court also pointed out that since the only route to judicial review of

a denial of SAW is the appeal of an order of deportation, in most cases judicial review can be obtained only by voluntary surrender for deportation. *See McNary,* 498 U.S. at 496–97, 111 S.Ct. at 898–99.

Plaintiffs' claims do not fall into the exception to the exhaustion rule described in *McNary.* Plaintiffs' claims are simply a challenge to rulings made by the BIA in individual cases. They are not a challenge to the procedures used, which would prevent the development of an adequate record, nor are they based on a contention that a statutory or constitutional right has been violated. As the Court stated in *Yi,* plaintiffs'

> claim that the BIA is impermissibly applying *Chang* is neither procedural nor collateral. It is, at bottom, a substantive challenge to the legal standard employed by the Government in adjudicating asylum claims. To describe this challenge as procedural because appellant is not challenging his order of exclusion but rather the legal standard upon which his order was based, is not persuasive.

24 F.3d at 505. As the Third Circuit pointed out in *Yi,* adopting plaintiffs' interpretation of "collateral" would effectively eviscerate the restrictive review procedures enacted by Congress. *Id.* All claims other than a direct challenge to a single denial of an asylum application would be considered collateral. This would undermine Congress' intent to speed the asylum adjudication process by limiting "piecemeal" review.[9] Furthermore, plaintiffs here, unlike the plaintiffs in *McNary,* are not precluded from seeking review of unfavorable determinations. Other cases cited by plaintiffs simply bolster the distinction between challenges to procedure and challenges to the merits of the decision where review is adequate. *See, e.g., Yi,* 24 F.3d at 506; *Perales v. Thornburgh,* 967 F.2d

---

8. Section 210(e) of INA, as set forth in 8 U.S.C. § 1160(e), provides, in part, that "there. shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection.... There shall be judicial review of such a denial only in the judicial review of an order of exclusion or deportation under section 1105a of this title."

9. As the Court noted in *Yi:*
 Congress did not haphazardly restrict an alien in exclusion proceedings to the writ of habeas corpus for judicial review. Congress ... carefully concluded that habeas corpus not only gave the alien the privilege of testing the legality of the proceedings, but also an opportunity for a fair hearing.
 24 F.3d at 504, n. 1.

798, 806 (2d Cir.1992) *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 3027, 125 L.Ed.2d 716 (1993); *El Rescate Legal Servs.,* 959 F.2d at 746–47; *Montes v. Thornburgh,* 919 F.2d 531, 535 (9th Cir.1990). Despite plaintiffs' arguments to the contrary, there is nothing about their claims which support their assertion that they will not be able to make an adequate administrative record for appeal. Even under the standards in *Chang,* the immigration judge is to determine whether the applicant has shown that the family planning policies are being used to single him out or achieve ends other than population control. Putting those facts into the record would also provide a more than adequate basis to determine asylum application under the alternative standard sought by plaintiffs.

■ Plaintiffs contend that, since the immigration judges, the BIA, and the INS do not consider the validity of regulations or claims under the APA, those claims are not subject to the requirements of exhaustion. Plaintiffs also argue that their claim that the BIA is employing an incorrect standard for the determination of asylum cases is one which is outside the "expertise" of the INS and the EOIR and therefore cannot be addressed in an individual administrative hearing because claims based on the APA cannot be raised in those hearings. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss and In Response to Defendant's Brief ("Plaintiffs' Response"), at 17, 22. Plaintiffs rely on *McCarthy v. Madigan* for the proposition that matters outside the institutional competence of an agency need not be brought before that agency in order to exhaust available remedies. 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). In *Madigan,* however, the Court made it clear that Congress had "not meaningfully addressed the appropriateness of requiring exhaustion" in the context administrative procedure involved in that case—the internal grievance procedure of the Federal Bureau of Prisons. Here, Congress has specifically limited the review of orders of exclusion and deportation.

Plaintiffs have also failed to explain why the BIA would not be able to reexamine its holding in *Chang.* In *Matter of G—,* the BIA considered, and rejected, a challenge to *Chang* based on Executive Order 12,771 and the January 1990 Interim Rule. Int.Dec. (BIA 1993) 3215, 1993 WL 522159 (B.I.A.). Similarly, in his appeal to the BIA, Liu argued that *Chang* should not be followed because it was in violation of the APA. Furthermore, these claims, when raised before the BIA, can be argued in the district court upon review. A ruling contrary to plaintiffs' position does not, by itself, support the assertion that the BIA lacks the competence to consider the claim.

■ Plaintiffs also contend that they need not exhaust their administrative remedies because their claims may be brought under the APA as an attack on the procedure used by the BIA rather than an individual determination. Under 5 U.S.C. § 702, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The APA creates a right to judicial review of final agency action where there is no adequate or reasonable remedy available in a court. *See Rush v. Cort,* 369 U.S. 367, 375, 82 S.Ct. 787, 792, 7 L.Ed.2d 809 (1962). A plaintiff need not exhaust permissive remedies before seeking relief under the APA. *Id.* Here, however, the plaintiffs have a route to review through the filing of habeas relief. *Whitney National Bank v. Bank of New Orleans and Trust Co.,* 379 U.S. 411, 420, 85 S.Ct. 551, 557, 13 L.Ed.2d 386 (1965); *Yi,* 24 F.3d at 507. Congress clearly intended that the judicial review procedure for BIA determinations be narrow and limited. *Garcia–Mir v. Smith,* 766 F.2d 1478, 1489 (11th Cir.1985).

Furthermore, as the Supreme Court has said, "injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The effects of the administrative action must "have been 'felt in a concrete way by the challenging parties.'" *Reno v. Catholic Social Services,*

—— U.S. ——, ——, 113 S.Ct. 2485, 2495, 125 L.Ed.2d 38 (1993) (quoting *Abbott Laboratories,* 387 U.S. at 148–149, 87 S.Ct. at 1515). Here, as in *Catholic Social Services,* the rule in *Chang* does not impose a penalty on plaintiffs, but merely limits access to a benefit which is not automatically available. *Catholic Social Services,* —— U.S. at ——, 113 S.Ct. at 2496. It is not enough, as plaintiffs contend, that they have begun the process of seeking asylum. Many plaintiffs have not yet had a hearing before an immigration judge. Even under the current standard, some of the plaintiffs, like Lin, may yet be granted asylum.

Thus, the statutory provisions of the INA preclude the consideration of any claims by plaintiffs who have not received a final order of exclusion. Similarly, the Court is precluded from certifying a class containing such individuals. *See Yi,* at 504; *Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979) (limiting class certification to cases where the court has jurisdiction over the claims of each individual member of the class). Accordingly, claims by plaintiffs who have not received a final order of exclusion must be dismissed, and class certification of any group containing such an individual must be denied.

That still leaves unresolved the status of plaintiffs and those seeking to be added as plaintiffs who have received final orders of exclusion. Relying on *United States ex rel. Sero v. Preiser,* 506 F.2d 1115 (2d Cir.1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975), plaintiffs argue that, even if an action by plaintiffs who have not yet received final orders of exclusion may not go forward, the Court should certify a habeas sub-class for all those plaintiffs who have received final orders of exclusion. Plaintiffs argue that certifying a habeas sub-class would promote judicial economy by resolving a recurrent issue—the applicable legal standard for PRC asylum cases—at one time.

Habeas class actions are an appropriate procedural vehicle in certain limited situations. Although habeas actions are not strictly governed by the Federal Rules of Civil Procedure and therefore the class action provisions of the rules do not automati-cally apply to habeas actions, a court retains the power "to fashion for habeas actions 'appropriate means of procedure, by analogy to existing rules or otherwise in conformity with judicial usage.'" *Sero v. Preiser,* 506 F.2d at 1125 (quoting *Harris v. Nelson,* 394 U.S. 286, 299, 89 S.Ct. 1082, 1090, 22 L.Ed.2d 281 (1969)); *see generally Bertrand v. Sava,* 684 F.2d 204 (2d Cir.1982); *Nguyen Da Yen v. Kissinger,* 528 F.2d 1194, 1203 (9th Cir.1975) (class certification appropriate in "unique" circumstances); *Williams v. Richardson,* 481 F.2d 358 (8th Cir.1973); *United States ex rel. Walker v. Mancusi,* 338 F.Supp. 311, 315–16 (W.D.N.Y.1971), *aff'd,* 467 F.2d 51 (2d Cir. 1972) (habeas corpus class certification for 38 prison inmates); *Martin v. Strasburg,* 689 F.2d 365, 374 (2d Cir.1982). Such a remedy is not, however, appropriate here.

First, to the extent that plaintiffs are seeking more than declaratory, the habeas relief sought must be considered on an individual basis. Thus in *Bertrand v. Sava,* a case relied upon by plaintiffs, the Court of Appeals specifically noted that the claims of the petitioners added as class members were, according to the district court, "indistinguishable from the original" petitioners. 684 F.2d 204, 219 (1982). While the legal challenge to the standard used to review asylum claims may be identical, plaintiffs' individual claims for asylum must necessarily rely on their unique circumstances. *See, e.g., Guo Chun Di v. Carroll,* 842 F.Supp. 858, 873–874 (E.D.Va.1994) (after rejecting *Chang* standard, court examined whether habeas petitioner had sufficiently opposed family planning policy to warrant asylum claim). Since a rejection of the BIA's standard would ultimately require individual consideration, judicial efficiency would not be increased by class certification.

Second, certification of a habeas sub-class addressed solely to the question of the legal standard to be used in evaluating asylum claims is barred because the Court lacks jurisdiction over petitioners located outside New York State. Section 2241(a) directs that "[w]rits of habeas corpus may be granted by the .... district courts ... within their respective jurisdictions." Since the result of an issuance of the writ is a direction to the

respondent to "free the body" of the petitioner from unlawful detention, the court issuing the writ must have jurisdiction over the person holding the petitioner in order to grant habeas relief. The controlling question is the location of the custodian, not the prisoner, because "the 'writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.'" *McCoy v. U.S. Board of Parole*, 537 F.2d 962 (8th Cir.1976) (quoting from *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494–495, 93 S.Ct. 1123, 1129–1130, 35 L.Ed.2d 443 (1973)).

In *Braden*, the petitioner was imprisoned in Alabama but was eventually to be tried under an indictment handed down in Kentucky. Petitioner applied to the District Court for the Western District of Kentucky to compel the Commonwealth of Kentucky to grant him a speedy trial. The Court held that the jurisdiction of the district court in considering a habeas petition requires only that the court issuing the writ have jurisdiction over the custodian of the prisoner. The Court proceeded by way of forum analysis, determining that the Western District of Kentucky was the most desirable forum for adjudication of the claim. The Court held that

[r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim ... even if the prisoner himself is confined outside the court's territorial jurisdiction.

The *Braden* Court overruled *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), to the extent that *Ahrens* held that habeas corpus petitions could be brought only in the district of the petitioner's confinement, noting that since *Ahrens*, Congress had acted to expand the 'jurisdiction' of the courts to issue habeas petitions. *See e.g.*, 28 U.S.C. § 2255; 28 U.S.C. § 2241(d); 28 U.S.C. § 2243.

Given the clear language in *Braden* concerning "service of process," it appears that the jurisdiction requirement of § 2241 is read to refer to personal jurisdiction over the custodian, rather than the geographical boundaries of the district court's jurisdiction. *See also Ex Parte Endo*, 323 U.S. 283, 306, 65 S.Ct. 208, 220, 89 L.Ed. 243 (1944) ("[W]e are of the view that the court may act if there is a respondent within reach of its process who has custody of the petitioner."); *see also Preiser*, 506 F.2d at 1128.

Accordingly, this Court has jurisdiction over this matter if personal service can be effected upon the petitioner's custodian. Both the identity and the location of a petitioner's custodian have been the subject of debate. At the very least, they are flexible concepts. For example, in *Strait v. Laird*, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972), the Supreme Court held that where an Army reservist who was a resident of California and had all his contacts with the Army in California, the commanding officer in Indiana, operating through officers in California, was in California for the limited purposes of habeas corpus jurisdiction. In this case, petitioner contends that the Attorney General is in fact the custodian and that she is amenable to service in this district. Alternatively, petitioner contends that his custodian is the INS district director. The government contends that the "custodian" is merely the warden of the facility where the petitioner is held.

Absent other considerations, the custodian should be considered to be the person who has day to day control over the petitioner and who can actually "produce the body." *See Ex Parte Endo*, 323 U.S. 283, 306, 65 S.Ct. 208, 220, 89 L.Ed. 243 (1944) (writ is directed to the "jailer" of the petitioner); *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C.Cir. 1986) ("The general rule is that a circuit judge has jurisdiction to grant a writ of habeas corpus only if the petitioner's immediate custodian is located within the circuit."); *Chukwurah v. INS*, 813 F.Supp. 161, 168 (E.D.N.Y.1993) (Habeas petitioner's challenge to INS detention "must be presented to the district court that has jurisdiction over petitioner's custodian, specifically, the war-

den of the INS detention facility."); *Billiteri v. United States Board of Parole,* 541 F.2d 938, 948 (2d Cir.1976) (warden is custodian, not parole board, where parole board's relation to petitioner was only as "the decision making body which may, in its discretion, authorize a prisoner's release on parole"). Although plaintiffs' argument that the Attorney General was the proper respondent was accepted in *Nwankwo v. Reno,* 828 F.Supp. 171 (E.D.N.Y.1993), *Nwankwo* specifically relied upon the extraordinary additional consideration that a transfer to the court with jurisdiction over the day-to-day custodian would mean effective denial of meaningful habeas corpus relief because of the backlog of cases there. *Id.* at 174. Plaintiffs have not provided any such compelling reasons here. Furthermore, if the Attorney General were considered the custodian, she "could be considered the custodian of every alien and prisoner in custody because ultimately she controls the district directors and prisons." *Yi* at 507; *Guerra v. Meese,* 786 F.2d 414, 416 (D.C.Cir.1986) (noting that expansive notion of custodian would mean that President, with power to pardon, would be a proper respondent). Thus, the Court cannot provide relief to aliens who are not detained in New York State, since their custodians are not subject to personal jurisdiction here. Although treating the district director as custodian would resolve some of the problems created by treating the Attorney General as the proper respondent, the district director is not the true day-to-day custodian. Plaintiffs also have not provided any compelling reasons for treating the INS district director as the proper custodian rather than the warden. Accordingly, the motion for certification of a habeas corpus sub-class is denied.

■ As to the seven remaining plaintiffs located within New York State who have received final orders of exclusion, it is similarly not appropriate for this Court to exercise jurisdiction over a habeas petitioner located outside the Eastern District. A holding that jurisdiction is proper where there are no compelling reasons to reach a petitioner outside the geographic confines of the district would add to the confusion about the proper place to file habeas petitions challenging asylum, which would, in turn, lead to further delay. As for petitioner Liu, he has not shown that the Southern District would be less advantageous than the Eastern District. Indeed, it appears that petitioner's reason for filing the petition in this district is so that it might be considered along with the class action in this case. Since no class action will be certified, there is no compelling reason for this Court to exercise jurisdiction over petitioner's habeas corpus petition. Plaintiffs state only that sending petitioners in the Southern District to the Southern District courthouse "would not assist in expediting the processing of these applications." Plaintiffs' Response at 5. Accordingly, the habeas corpus petition is dismissed with leave to refile in the United States District Court for the Southern District of New York.

For the reasons discussed above, the action is dismissed except as to those two plaintiffs who are located in the Eastern District of New York and who have received final orders of exclusion without prejudice to the filing of habeas petitions in appropriate courts having jurisdiction over the custodian once final orders of exclusion have been received. The two plaintiffs located within the Eastern District of New York who have exhausted their administrative remedies may continue to seek relief through writs of habeas corpus. All other motions are denied with leave to renew in any court having jurisdiction over the plaintiffs or petitioners.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.