**Chun Man SO, Petitioner,**

v.

**Janet RENO, U.S. Attorney General, Immigration and Naturalization Service, Respondent.**

**No. 00 CV 6964(JBW).**

United States District Court,
E.D. New York.

Jan. 24, 2003.

1114

Ellyn I. Bank, New York City, for petitioner.

Scott Dunn, Patrick Shen, U.S. Attorney's Office, Brooklyn, NY, for respondents.

AMENDED MEMORANDUM, ORDER, AND JUDGEMENT

WEINSTEIN, Senior District Judge.

## TABLE OF CONTENTS

I. Introduction .................................................... 1117
II. Facts .......................................................... 1118
III. Preliminary Questions ......................................... 1120
 A. Law ........................................................ 1120
 1. Requirements of 28 U.S.C. § 2241 ...................... 1120
 2. Mootness ............................................. 1120
 B. Application of Law to Facts ................................ 1124
 1. Requirements of 28 U.S.C. § 2241 ...................... 1124
 2. Mootness ............................................. 1124
IV. Questions Remanded ............................................ 1125
 A. Law ........................................................ 1125
 1. Petitioner's Detention ............................... 1125
 2. Venue in Habeas Proceedings .......................... 1126
 3. Attorney General as Respondent ....................... 1127
 4. Scope of Habeas Review ............................... 1129
 B. Application of Law to Facts ................................ 1130
 1. Petitioner's Detention ............................... 1130

2. Venue in Habeas Proceedings .......................................1130
3. Attorney General as Respondent ..................................1131
4. Scope of Habeas Review..........................................1131
V. Conclusion .................................................................1131

## I. Introduction

This case raises a troubling question respecting the authority of this court under Article III of the Constitution to adjudicate the matter. *See generally Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). One party—the petitioner—has been deported and his whereabouts are unknown. The other party—the government—has succeeded in its aim to remove the petitioner from the United States and has no interest in the litigation. If petitioner were to be contacted, a live controversy might exist. *See, e.g., United States v. Villamonte–Marquez,* 462 U.S. 579, 581 n. 2, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983) (deportation does not render Fourth Amendment Challenge moot because of the collateral consequences of the underlying conviction); *United States v. Gonzalez–Roque,* 301 F.3d 39 (2d Cir.2002) (deportation does not render motion to dismiss indictment charging illegal reentry moot because of collateral consequences of indictment). Because the court of appeals has directed this court to answer abstract questions it posed in a remand, this memorandum, order, and judgment is issued.

Chun Man So ("Mr. So" or "petitioner") sought a writ of habeas corpus in this district in November 2000 challenging the Board of Immigration Appeals' ("BIA") refusal of his request for a change in venue; the BIA's denial on its merits of his application for discretionary relief under former Immigration and Nationality Act section 212(c), 8 U.S.C. § 1182(c) ("212(c)"); and his lengthy detention. Janet Reno ("Attorney General") and the Immigration and Naturalization Service ("INS") were named as respondents. That petition was

dismissed by this court after a hearing in May 2001. Petitioner appealed to the Court of Appeals for the Second Circuit. That court remanded to this court in August 2002 with directions to clarify the basis for its ruling. Mandate, *So v. Reno* (2d Cir.2002) (No. 01–2344).

■ For the reasons noted orally on the record at the hearings held in May 2001 and January 2003, and discussed further in this memorandum, order, and judgment, this court can offer no relief to Mr. So. Although immigration law in this country is often characterized by its lack of clarity, the court of appeals for the Second Circuit has provided a seemingly definite and unambiguous answer to the question at issue here. The scope of habeas review does not extend to the review of factual or discretionary decisions made by immigration judges and the BIA. *See Sol v. INS,* 274 F.3d 648 (2d Cir.2001). Discretionary decisions include those decisions challenged here—requests for a change in venue and rulings on the merits of applications for 212(c) relief.

Despite what appears to have been since the beginning a clear outcome unfavorable to petitioner, the non-dispositive issues raised by the court of appeals in its remand must, of course, be addressed. This court was directed to "clarify" the basis for its ruling in light of *Calcano–Martinez v. INS,* 232 F.3d 328 (2d Cir.2000); *Sol v. INS,* 274 F.3d 648 (2d Cir.2001); and *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In addition, the court of appeals for the Second Circuit posed two specific questions: (1) whether the petition was filed in the proper venue or whether transfer to another venue would be appropriate; and (2) if the petition is in the proper venue, whether the

Attorney General is appropriately cited as custodian and therefore a proper respondent in habeas cases brought by individuals in the custody of the INS.

Since Mr. So was deported in December 2001, this court must first consider whether Mr. So continues to satisfy the "in custody" requirement of 28 U.S.C. § 2241 and whether his removal in and of itself renders the petition moot.

In summary, this court finds that (1) petitioner satisfies the "in custody" clause, (2) the case is not moot as a result of Mr. So's deportation with the exception of the claim pertaining to his excessive detention, (3) venue in the Eastern District of New York is proper, and (4) the Attorney General is an appropriate respondent. This court can provide Mr. So no relief since the scope of habeas review does not extend to discretionary decisions of immigration judges and the BIA such as those challenged here.

## II. Facts

Petitioner Chun Man So is a citizen of China. He was admitted to the United States on January 29, 1982 and was a lawful permanent resident in New York. Also residing in New York were his wife, twin daughters, mother, father, sister, and a brother, all of whom are United States citizens. Other members of Mr. So's family are legal permanent residents. In July 1993, Mr. So was convicted in the Eastern District of New York of the use of a communications facility for distribution of heroin and was sentenced to 48 months in prison and one year of supervised release. 21 U.S.C. § 843(b); *United States v. So* (E.D.N.Y. July 26, 1993) (No. 93 CR 331).

Upon the completion of Mr. So's term of imprisonment in 1996, INS initiated deportation proceedings based on the 1993 conviction. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii) (a non-citizen convicted of an aggravated felony after admission to the United States shall be removed); 1227(a)(2)(B)(i) (a non-citizen convicted of a violation of any law relating to a controlled substance shall be removed). He was sent to a federal detention facility in Oakdale, Louisiana, but was subsequently released on bond pending a decision in his removal proceedings.

In August 1996, the immigration judge in Oakdale found Mr. So deportable as charged and ineligible for any relief from removal. Mr. So filed a timely appeal from that decision with the BIA. The BIA dismissed his appeal in March 1997. Following the BIA's decision, Mr. So was again detained in the Oakdale facility.

While in custody in Louisiana, Mr. So filed a petition for a writ of habeas corpus in the Eastern District of New York naming Janet Reno and the INS as respondents. *See* Amended Order and Judgment, *So v. Reno* (E.D.N.Y. May 25, 1999) (Nos. 97 CV 4081 & 99 CV 2737). In June 1999, this court issued an order and judgment finding him eligible to apply for 212(c) relief from deportation pursuant to the decision in *Henderson v. I.N.S.*, 157 F.3d 106 (2d Cir.1998), *cert. denied sub. nom., Reno v. Navas*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999). *Id.* It ordered the Executive Office for Immigration Review ("EOIR") to schedule petitioner for a 212(c) hearing within 60 days. *Id.*

The EOIR remanded the case to an immigration judge in Oakdale to conduct the section 212(c) hearing. Mr. So filed a motion for a change of venue to New York, but that motion was denied. *See In re Chun Man So* (BIA May 16, 2000) (File No. A35 804 445). A full hearing was held before the immigration judge in October 1999. Despite the decision of this court that under the law in the Second Circuit Mr. So was entitled to apply for discretionary relief under section 212(c), the immigration judge issued a decision holding

that it was bound by the Fifth Circuit law and therefore Mr. So was statutorily ineligible for Section 212(c) relief under *Requena–Rodriguez v. Pasquarell,* 190 F.3d 299 (5th Cir.1999). Oral Decision of the Immigration Judge, *In re Chun Man So* (EOIR Oct. 15, 1999) (File No. A 35 804 445).

The immigration judge nevertheless held a hearing on the merits of Mr. So's 212(c) application so that if the BIA disagreed with the ineligibility holding the entire case would be before it. On the basis of that hearing, the immigration judge found that "the seriousness of respondent's crime as well as his other involvement with drug trafficking overcomes the positive equities that the respondent has demonstrated." *Id.* at 13. Even assuming that Mr. So was statutorily eligible, she would have denied a 212(c) application in her discretion as not in the best interest of the United States. *Id.*

On appeal, the BIA reversed the immigration judge's decision finding Mr. So statutorily ineligible for section 212(c) relief on the grounds that Second Circuit law and this court's June 1999 decision applied as the law of the case. *In re Chun Man So* (BIA May 16, 2000) (File No. A35 804 445). The immigration judge's failure to grant a change of venue to New York was found to be harmless error since Mr. So had not shown prejudice as a result of that denial. *Id.* at 2. Mr. So's application for relief under 212(c) was denied by the BIA on its merits: "We agree with the Immigration Judge's recitation and weighing of the various factors present here, and we agree that the negative factors in the case outweigh the favorable factors. The respondent has not provided evidence which might lead to a different discretionary outcome." *Id.*

In October 2000, after Mr. So had been in INS custody for well over three years, he requested and was denied supervised release. *See* Decision to Continue Detention Following File Review (INS October 19, 2000) (File No. A35 804 445). In November 2000, Mr. So again filed a habeas corpus petition naming the Attorney General and INS as respondents before this court. *See* 28 U.S.C. § 2241 (2002). At a hearing in May 2001, Mr. So appeared by telephone since he was still in INS custody in Louisiana. Transcript of Proceedings on May 17, 2001, at 2 ("Transcript May 17, 2001"). An attorney who had previously represented Mr. So in his immigration proceedings, Jack Sachs, Esq., also was present by telephone at that hearing even though Mr. So's habeas petition was filed pro se, apparently without the aid of Mr. Sachs. *Id.* at 2–3; Verified Petition for Writ of Habeas Corpus, *So v. Reno* (Feb. 4, 2001) (No. 00 CV 6964). Mr. Sachs was not representing Mr. So at the hearing; Mr. So spoke for himself. *See* Transcript May 17, 2001.

After hearing both the government and Mr. So, this court concluded that, although it might have reached a different conclusion than the BIA if it were hearing the case in the first instance, an administrative decision had been properly made after a hearing, the opportunity to submit evidence, and an appeal. *Id.* at 8. This court further noted on the record that it believed it then had no basis to intervene on the question of the length of Mr. So's detention. *Id.* at 8–9.

A notice of appeal was filed to the Court of Appeals for the Second Circuit by Mr. So, still appearing pro se. The government was not contacted by the court of appeals, did not receive a scheduling order, did not file a brief, and was not involved in the appellate process. Transcript of Proceedings on January 6, 2003, at 5–6 ("Transcript Jan. 6, 2003").

In August 2002 the court of appeals remanded the case to this court for it to

clarify the basis for its ruling as described above. It stated:

> Appellant appeals from the judgment of the district court dismissing his 28 U.S.C. § 2241 petition for lack of jurisdiction. Upon due consideration, it is ORDERED that the judgment is VACATED and the case is remanded to the district court to clarify the basis for its ruling in light of this Court's decisions in *Calcano–Martinez v. INS*, 232 F.3d 328 (2d Cir.2000) (holding that Article III courts continue to have habeas jurisdiction under § 2241 over legal challenges to final removal orders; however, Court of Appeals lacks jurisdiction under the Immigration and Nationality Act ("INA") § 242(a)(2)(C) over petitions for review filed by certain criminal aliens challenging final orders of removal), and *Sol v. INS*, 274 F.3d 648 (2d Cir.2001) (finding that federal jurisdiction under § 2241 does not extend to review of discretionary determinations by an immigration judge or the Board of Immigration Appeals), and the United States Supreme Court decision in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (holding that an indefinite detention of deportable aliens constituted a due process violation). The district court may wish to consider, with briefing from the parties if necessary, whether the petition was filed in the proper venue and whether transfer to another venue would be appropriate, and if inappropriate, whether the Attorney General is appropriately cited as custodian, and thus respondent, in alien habeas cases. *See Henderson v. INS*, 157 F.3d 106 (2d Cir.1998).

Mandate, *So v. Reno* (2d Cir.2002) (No. 01–2344).

In December 2001, while Mr. So's appeal was still pending in the Court of Appeals for the Second Circuit, he was deported to China from the Oakdale, Louisiana facility. Neither this court nor the Assistant United States Attorney in charge of the case were aware of Mr. So's deportation.

Upon receiving the *ex parte* mandate from the court of appeals in August 2002, this court ordered counsel appointed for the petitioner and directed the parties to brief the relevant issues. This court requested that Mr. So be made available to participate by telephone at a hearing. In a letter dated December 31, 2002, the warden of the Federal Detention Center in Oakdale informed the court of Mr. So's deportation in December 2001. This court's hearing occurred on January 6, 2003 without Mr. So's attending by telephone; apparently he was unavailable someplace in China.

### III. Preliminary Questions

#### A. Law

##### 1. Requirements of 28 U.S.C. § 2241

Section 2241(c)(1) of Title 28 of the United States Code provides that district courts may consider habeas petitions from prisoners "in custody under or by color of the authority of the United States." The "in custody" requirement is satisfied if the petitioner files the habeas petition before being deported. *See Gonzalez v. INS*, 2002 WL 31444952 (S.D.N.Y.2002) (petitioner satisfies "in custody" requirement of 28 U.S.C. § 2241 so long as in physical custody at the time the petition is filed even if later deported); *cf. Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (incarceration of petitioner at the time the petition is filed is sufficient to satisfy "in custody" requirement of 28 U.S.C. § 2254 even if petitioner is released before petition decided).

##### 2. Mootness

A non-citizen who has been deported must go beyond satisfying the "in custody" requirement of the federal habeas statute; it must also be demonstrated

that the case is not moot as a result of the deportation. A case is moot if it no longer presents a "case or controversy" within the meaning of Article III, Section 2 of the Constitution. In order for a habeas petitioner who is no longer in custody to demonstrate a case or controversy, a "concrete and continuing injury" that is a "collateral consequence" of the detention and can be remedied by granting the writ must exist. *Spencer,* 523 U.S. at 7, 118 S.Ct. 978; *see Gonzalez,* 2002 WL 31444952, at *3.

■ The Supreme Court has provided two different standards governing the burden on petitioners no longer in custody attempting to show collateral consequences. In *Sibron v. New York,* the Court held that collateral consequences would be presumed in the case of a petitioner challenging his underlying criminal conviction because of the "obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences." 392 U.S. 40, 54–55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). This presumption can be overcome only by a showing "that there is no possibility that any collateral legal consequences will be imposed." *Id.* at 57, 88 S.Ct. 1889; *see also Perez v. Greiner,* 296 F.3d 123, 125 (2d Cir.2002).

In *Spencer v. Kemna,* the Court announced a more demanding standard for a petitioner challenging a revocation of parole. Collateral consequences would not be presumed; petitioners must demonstrate a concrete injury in fact. 523 U.S. at 13–14, 118 S.Ct. 978. Although the Court in *Spencer* spoke somewhat critically of the practice of assuming collateral consequences, it did not alter the *Sibron* presumption but rather declined to extend it to petitioners challenging a revocation of parole rather than an underlying criminal conviction. *See Perez,* 296 F.3d at 125, n. 4 (applying *Sibron* standard to a habeas petition challenging an underlying criminal

conviction, but finding petition moot because there was "no possibility" of any collateral legal consequences); *see also, e.g., United States v. Mercurris,* 192 F.3d 290 (2d Cir.1999) (recognizing *Sibron* presumption but declining to extend it to a petitioner challenging a sentence enhancement); *United States v. Probber,* 170 F.3d 345 (2d Cir.1999) (recognizing *Sibron* presumption but finding a challenge to revocation of supervised release indistinguishable from the parole revocation at stake in *Spencer* ).

The Court of Appeals for the Second Circuit has applied the *Sibron* standard in a habeas petition challenging a criminal conviction when the petitioner was deported after the notice of appeal was filed but before the appeal could be heard. *See Perez,* 296 F.3d 123. It is not entirely clear which standard should apply in a challenge to a final order of deportation by a petitioner who is deported before a final decision is reached. *See Gonzalez,* 2002 WL 31444952, at *4.

Deportation, like a criminal conviction, almost always entails adverse collateral legal consequences. While technically a civil proceeding and non-punitive, deportation is a harsh sanction that has long been recognized as more severe than many criminal penalties. *See Harisiades v. Shaughnessy,* 342 U.S. 580, 594, 72 S.Ct. 512, 96 L.Ed. 586 (1952) ("Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure."); *Bridges v. Wixon,* 326 U.S. 135, 147, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945) ("[D]eportation may result in the loss 'of all that makes life worth living'.") (quoting *Ng Fung Ho v. White,* 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922)); *Lok v. INS,* 548 F.2d 37, 39 (2d Cir.1977) ("Deportation is a sanction which in severity surpasses all but the most Draconian criminal penalties."); *Be-*

*harry v. Reno,* 183 F.Supp.2d 584, 590 (E.D.N.Y.2002) ("Characterizing a serious penalty as civil rather than criminal does not reduce its sting or make it any less punitive. However bottled, poison is toxic."); *Gonzalez,* 2002 WL 31444952, at *4.

■ Aside from the immediate loss of family, friends, livelihood, and home in the United States and return to an uncertain future in an often now unfamiliar land entailed by deportation, a final order of removal itself has potentially lifelong collateral consequences. Non-citizens removed from the United States are barred from reentering for a number of years following their deportation. *See* 8 U.S.C. § 1182(a)(9) (2002). If they reenter or attempt to reenter illegally, they can be convicted of a crime and imprisoned or fined or both. *See* 8 U.S.C. § 1326 (2002). If the reentry is in violation of the terms of supervised release or parole, punishment may be doubled—once for the illegal reentry and once for the violation of supervised release or parole. Non-citizens ordered removed for the conviction of an aggravated felony or an offense related to a controlled substance are permanently inadmissible. *See* 8 U.S.C. §§ 1182(a)(2)(A)(i)(II); 1182(a)(9)(A)(i) (2002). Given the wealth and severity of these consequences of an order of deportation, it seems fair to apply the *Sibron* presumption of adverse collateral consequences for non-citizens challenging a final order of removal. *See Sule v. INS,* 189 F.3d 478, 1999 WL 668716, at *2 (10th Cir.1999) (unpublished opinion) ("[W]e strongly suspect that deportation may, as a matter of law, always entail collateral consequences ...."). *But see Ramirez v. INS,* 86 F.Supp.2d 301 (S.D.N.Y.2000) (court unwilling to presume collateral consequences in light of *Spencer*).

Even if the *Sibron* presumption is not applied, many if not most deported non-citizens can demonstrate concrete adverse collateral consequences more than sufficient to satisfy the requirements of *Spencer. See Gonzalez,* 2002 WL 31444952 (although pro se petitioner was not in contact with the court since deportation and did not brief the issue of mootness, the record before the court was sufficient to demonstrate adverse collateral consequences).

Several courts have relied on *Spencer* to find habeas petitions filed by pro se petitioners moot following deportation because the petitioners failed to specifically allege any concrete collateral consequences resulting from the executed removal order. *See, e.g., Sule,* 189 F.3d 478, 1999 WL 668716; *Ramirez,* 86 F.Supp.2d 301. There are a number of practical problems with this position. It is unlikely that petitioners, once deported, will know that the burden lies on them to demonstrate the collateral consequences of a final order of deportation. It is likely that only petitioners with active representation would be able to successfully demonstrate collateral consequences sufficient to avoid mootness and dismissal; such petitioners are less likely to be deported while legal action is pending in the first place. It has been suggested that it makes little sense to continue to adjudicate the petition in the petitioner's absence, *see, e.g., Ramirez,* 86 F.Supp.2d at 304, but the collateral consequences of an order of deportation do not disappear once the petitioner has been removed. If the *Spencer* standard is to be applied to challenges to final orders of deportation, it would therefore make sense, at a minimum, to look to the record before the court to ascertain whether concrete collateral consequences of the deportation order exist.

Regardless of the standard applied for showing collateral consequences, cases are generally not considered moot solely by reason of a party's deportation. *See, e.g., United States v. Villamonte–Marquez,* 462

U.S. 579, 581 n. 2, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983) (deportation does not render Fourth Amendment Challenge moot because of the collateral consequences of the underlying conviction); *United States v. Gonzalez–Roque*, 301 F.3d 39 (2d Cir.2002) (deportation does not render motion to dismiss indictment charging illegal reentry moot because of collateral consequences of indictment); *United States v. Londono*, 100 F.3d 236 (2d Cir. 1996) (defendant's deportation did not moot government's appeal relating to downward departure in defendant's sentence even though it would be illegal to resentence defendant in absentia and deportation was by a government agency without counsels' or trial court's knowledge; remanded for resentence); *United States v. Montez–Gaviria*, 163 F.3d 697 (2d Cir.1998) (defendant's deportation did not moot appeal by defendant concerning defendant's sentence).

■ Holding that all habeas petitions challenging a final order of deportation are moot once the petitioner is deported may present constitutional questions. Congress attempted to streamline the deportation of certain classes of non-citizens with the 1996 enactments of the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See Henderson v. INS*, 157 F.3d 106, 118 (2d Cir.1998). Non-citizens like Mr. So, with deportation proceedings commencing prior to April 1, 1997 and orders of deportation becoming final after October 30, 1996, are subject to the transitional rules of IIRIRA. *See* IIRIRA 309(c), Pub.L. No. 104–208, 110 Stat. 3009 (1996). According to the transitional rules, no appeal from any decision of the BIA is permitted for non-citizens deportable because of their conviction of certain crimes, including aggravated felonies and violations involving controlled substances. *See id.* A petition for habeas corpus is the only avenue for judicial relief for such non-citizens. *See INS v. St. Cyr*, 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Henderson v. INS*, 157 F.3d 106 (2d Cir.1998), *cert. denied sub nom., Reno v. Navas*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *Jean–Baptiste v. Reno*, 144 F.3d 212, 218 (2d Cir.1998), *reh'g denied*, 175 F.3d 226 (2d Cir.1999).

The Court of Appeals for the Second Circuit has suggested that AEDPA and IIRIRA's repeal of judicial review for certain classes of non-citizens is not unconstitutional precisely because "some avenue for judicial relief [is] available through a challenge to detention by application for habeas corpus." *Calcano–Martinez v. INS*, 232 F.3d 328, 333 (2d Cir.2000), *aff'd*, 533 U.S. 348, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001); *see also Henderson*, 157 F.3d at 122 ("[F]or at least a hundred years, the courts have reviewed the executive branch's interpretation of the immigration laws, and have deemed such review to be constitutionally mandated."); *Hincapie–Nieto v. INS*, 92 F.3d 27, 30–31 (2d Cir. 1996). The Supreme Court held that the amendments to AEDPA and IIRIRA did not deprive the federal district courts of habeas jurisdiction under section 2241 of title 28 in part to avoid constitutional questions. *St. Cyr*, 533 U.S. at 299–305, 121 S.Ct. 2271 ("A construction of the amendments at issue that would entirely preclude review of a pure question of law by any court would give rise to substantial constitutional questions.").

If all habeas petitions are moot once the petitioner is deported, INS could effectively foreclose this last remaining avenue of judicial relief, deny non-citizens due process of law, and eviscerate the meaning of the Suspension Clause simply by deporting non-citizens while their habeas petitions are pending. U.S. Const. Art. I, Sec. 9, cl. 2 ("The Privilege of the Writ of Habe-

as Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."). It is true that if INS were prohibited entirely from removing non-citizens with pending cases that non-citizens could stall deportation indefinitely by prolonging legal action, but this argument does not weigh in favor of finding all habeas petitions moot after deportation for several reasons. First, allowing habeas petitions, which if granted could remedy collateral consequences of a final order of deportation, to proceed after the petitioner's deportation is a significantly narrower remedy than prohibiting INS from removing any non-citizen with a pending legal action. Second, given the harsh conditions in which non-citizens are currently confined pending removal, the extremely circumscribed opportunities for challenging that detention, the limited possibility of obtaining assistance of counsel, and the lengthy amount of time generally involved in pursuing a habeas petition, it is unlikely that incarcerated non-citizens without a strong argument for judicial relief would choose to prolong their detention simply to put off deportation.

B. Application of Law to Facts

1. Requirements of 28 U.S.C. § 2241

Mr. So filed this habeas petition in November of 2000, over a year before he was deported in December 2001. The "in custody" requirement is therefore satisfied.

2. Mootness

 Mr. So's challenge to the lawfulness of the length of time that he has been held in the physical custody of the INS is moot. Since Mr. So has already been deported, it is impossible to grant his request for supervised release or release on bond or supervision until he can be deported. It is Mr. So's final order of deportation that causes him continuing injury. Granting a release on bond or supervision until deportation has no effect on an executed final order of removal, and thus cannot remedy the collateral consequences of such an order.

 Mr. So's challenges to the refusal of his request for a change in venue of his immigration proceedings and denial on its merits of his application for discretionary relief under former section 212(c) are not moot. As discussed above, it is reasonable to apply the *Sibron* presumption of adverse collateral consequences to cases of non-citizens challenging a final order of removal. Even if the *Sibron* presumption is not applied, Mr. So can demonstrate concrete adverse collateral consequences sufficient to satisfy the requirements of *Spencer*. Although Mr. So's deportation precludes him as a practical matter from addressing the question of mootness, the record before the court demonstrates that a final order of removal gives rise to substantial adverse collateral consequences in his case. *See Gonzalez*, 2002 WL 31444952 (although pro se petitioner has not been in contact with the court since deportation and has not briefed the issue of mootness, the record before the court is sufficient to demonstrate adverse collateral consequences).

 Even if the court should look to the record before it to ascertain the collateral consequences of a final order of deportation only where a petitioner is pro se, Mr. So is in the position of an unrepresented petitioner for this purpose. This petition was filed pro se. An attorney who had previously represented Mr. So appeared by telephone at the hearing in May 2001, but was not representing him at the time and apparently did no work on the matter. Mr. So spoke almost exclusively for himself at that hearing. This court directed that counsel be appointed for Mr. So only upon remand of the case from the Court of Appeals for the Second Circuit,

after he already had been deported. Counsel was not appointed, then, until some months following petitioner's deportation and has not presented any arguments to the court on his behalf.

The collateral consequences of a final order of removal that continue to confront Mr. So after his deportation are severe even aside from the sanction and loss resulting from the deportation itself. If the order stands, Mr. So probably will be barred permanently from reentering the United States. He will be prevented from visiting his wife, daughters, and extended family if they remain here. If he attempts or succeeds in illegally reentering, he could be convicted of a crime. Furthermore, if he reenters in violation of his final order of deportation it is likely that the Attorney General can simply reinstate the prior order of removal against him without an opportunity for him to collaterally attack its validity. *See* 8 U.S.C. § 1231(a)(5) (2002); *Alvarenga–Villalobos v. Ashcroft,* 271 F.3d 1169 (9th Cir.2001).

It is possible to remedy these collateral consequences, whether presumed or concrete, by granting Mr. So's writ. Mr. So is challenging the merits of the final order of removal entered against him. If Mr. So is entitled to a section 212(c) hearing in a different venue or to review of the immigration judge's decision finding that he did not merit relief from deportation, granting his petition could result in a grant of relief under former section 212(c) and the invalidation of his final order of removal. Consequences such as a criminal prosecution for illegal reentry and lifelong inadmissability could be avoided by a decision in petitioner's favor. *See, e.g., United States v. Calderon,* 02 CR 0691(JBW), 2003 WL 1338943 (E.D.N.Y. 2003) (dismissing indictment charging defendant with illegal reentry because the defendant's prior deportation was unlawful); *United States v. Figueroa–Taveras,*

228 F.Supp.2d 428 (S.D.N.Y.2002) (same); *United States v. Copeland,* 228 F.Supp.2d 267 (E.D.N.Y.2002) (same); *United States v. Perez,* 213 F.Supp.2d 229 (E.D.N.Y. 2002) (same).

The fact that it has not yet been possible to contact Mr. So following his deportation does raise troubling Article III jurisdictional issues. The parties who appeared before this court at the hearing in January 2003—the government and appointed counsel for Mr. So—appear to have no further interest in litigating this case.

If Mr. So were to be located and were he to be interested in prosecuting this proceeding, however, a live controversy would exist. Although the court of appeals decision in *Sol v. INS,* 274 F.3d 648 (2d Cir.2001), seems to dictate an adverse outcome for petitioner, were he in contact he would have a strong interest in continuing to challenge his final deportation order through a habeas petition. It would be possible for Mr. So to contest an interpretation of the breadth of *Sol*'s holding that would preclude federal jurisdiction under 28 U.S.C. § 2241 over any administrative discretionary determination or to challenge *Sol*'s applicability in his case.

### IV. Questions Remanded

The scope of habeas review does not extend to the discretionary decisions of the BIA challenged by Mr. So. In response to the Court of Appeals for the Second Circuit's mandate. however, venue and the appropriateness of the Attorney General as respondent must first be addressed. Since the cases cited in the mandate also suggest a concern with the lawfulness of Mr. So's assumed continued detention, that question will be considered as well.

#### A. Law

##### 1. Petitioner's Detention

 Section 1231(a)(6) of Title 8 of the United States Code permits the continued

detention of a non-citizen removable as a result of certain criminal convictions if the Government does not deport that non-citizen within the 90 day period generally allotted for removal. The Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), construed that provision to contain a reasonable time limitation. Because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," detention beyond the 90 day removal period was found to be implicitly limited to a time reasonably necessary to remove the non-citizen from the United States. *Id.* at 690, 699, 121 S.Ct. 2491. The federal courts under the basic federal habeas corpus statute have the authority to determine whether continued detention is reasonable in any individual case. *Id.* at 699, 121 S.Ct. 2491; 28 U.S.C. § 2241 (2002). To guide the determinations of the lower federal courts, the Supreme Court established six months as a presumptively reasonable period of detention. *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491.

Since petitioner has been deported and the question of the lawfulness of his continued detention is therefore moot, it is not necessary to consider further the standards for determining whether the detention of a non-citizen subject to a final order of removal is pursuant to statutory authority and constitutional. *See generally, e.g., Zadvydas*, 533 U.S. 678, 121 S.Ct. 2491; *Mapp v. Reno*, 241 F.3d 221 (2d Cir.2001); *Sol v. INS*, 274 F.3d 648 (2d Cir.2001).

### 2. Venue in Habeas Proceedings

 Questions of personal jurisdiction are generally considered before questions of venue. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). It is not entirely clear under these circumstances which should be considered first. *See Henderson*, 157 F.3d at 128 n. 24 (considering personal jurisdiction before venue in

a habeas petition filed by a non-citizen challenging a final order of deportation, but characterizing the Supreme Court in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), and *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), as implicitly relying on venue grounds to avoid stating that the Attorney General was not a proper respondent). Venue will be discussed here first simply because it is a less complicated question and because it is the first question posed by the Court of Appeals.

 The habeas statute does not contain a governing venue provision. Traditional venue considerations therefore apply. *Braden*, 410 U.S. at 493–94, 93 S.Ct. 1123. These considerations include: "(1) the location where the material events took place, (2) where records and witnesses pertinent to the claim are likely to be found, (3) the convenience of the forum for respondent and petitioner, and (4) the familiarity of the court with the applicable laws." *Mojica v. Reno*, 970 F.Supp. 130, 167–68 (E.D.N.Y.1997) (citing *Braden*, 410 U.S. at 493–94, 93 S.Ct. 1123). These considerations have been found to militate in favor of the Eastern District of New York as an appropriate venue for a petitioner detained in the INS Oakdale facility in Louisiana where that petitioner had resided in New York, had family still living in New York, had counsel in New York, and had been convicted of the crime on which deportability was based in the Eastern District of New York. *Mojica*, 970 F.Supp. at 167–68.

The Court of Appeals for the Second Circuit has concurred in the conclusion that traditional venue considerations apply for a habeas petition brought by an individual in the custody of the INS, but has not been squarely faced with the question of proper venue. *See Henderson*, 157 F.3d

at 124–28 (certifying a question of personal jurisdiction to the New York Court of Appeals and thus finding it unnecessary to consider venue independently from the question of the appropriate respondent).

A number of district courts in the Second Circuit have agreed that venue is proper outside of the district in which petitioner is in custody where some combination of the following factors is present: petitioner had lived and continued to have family in or near the district, petitioner had counsel in the district, criminal activity or a conviction underlying the order of removal had occurred in the district or state, petitioner's deportation proceedings or first contact with INS occurred in the district, and petitioner had no connection to the jurisdiction in which he or she was detained prior to being sent to a facility there. *See, e.g., Lee v. Ashcroft,* 216 F.Supp.2d 51, 55–56 (E.D.N.Y.2002); *Barton v. Ashcroft,* 152 F.Supp.2d 235, 240–41 (D.Conn.2001); *Alcaide–Zelaya v. McElroy,* 2000 WL 1616981, at *5 (S.D.N.Y. 2000); *Arias–Agramonte v. Commissioner of INS,* 2000 WL 1059678, at *9 (S.D.N.Y. 2000); *Santos–Gonzalez v. Reno,* 93 F.Supp.2d 286, 292–93 (E.D.N.Y.2000); *cf., e.g., Nguyen v. Reno,* 2000 WL 1134361 (E.D.N.Y.2000) (venue in the Eastern District of New York is not proper where petitioner lived and committed the underlying crime in California, had been incarcerated in Texas, was in the custody of INS in Louisiana, and had no connection to New York); *Carranza v. Reno,* 2000 WL 433957, at *1 (Venue is not proper where "[n]othing in this case has anything to do with the State of Connecticut.") (D.Conn.2000).

### 3. Attorney General as Respondent

In order for the Attorney General to be an appropriate respondent, two conditions must be met. First, the official must fall within the meaning of "custodian" for habeas purposes, and second, the

trial court must have personal jurisdiction over him or her.

A writ of habeas corpus is to be directed to "the person having custody of the person detained." 28 U.S.C. § 2243 (2002). The habeas statute does not specify who that person is. *Henderson,* 157 F.3d at 122; *Nwankwo v. Reno,* 828 F.Supp. 171, 174 (E.D.N.Y.1993).

Historically, the custodian for habeas purposes was assumed to be the warden with direct, day-to-day control over the petitioner. More contemporary case law and recent statutes suggest a practical approach to the question. *See, e.g., Nwankwo,* 828 F.Supp. at 174 ("While the general rule may be sound as a matter of policy, the language of the habeas corpus statute does not compel rigid adherence to it in every case."); *Eisel v. Sec'y of the Army,* 477 F.2d 1251, 1258 (D.C.Cir.1973) ("Nowhere do[ ] the statutes speak of an 'immediate custodian' or intimate that an action must necessarily be instituted in the location of such an 'immediate custodian,' even if it were possible to grant substance to the vague concept of 'immediate custodianship.' "). For additional discussion, see *Henderson,* 157 F.3d at 124–128.

Neither the Supreme Court nor the Court of Appeals for the Second Circuit has provided a definitive answer to whether the Attorney General is an appropriate respondent. *Mojica* found that the Attorney General was a custodian for habeas corpus purposes and therefore an appropriate respondent. 970 F.Supp. at 166–67. On appeal, the court of appeals deferred that question as potentially unnecessary to resolve after certifying the question of whether personal jurisdiction over the INS District Director in New Orleans existed under New York law to the New York Court of Appeals. *See Henderson,* 157 F.3d at 122–28. The New York Court of Appeals declined to consider the question

certified to it. *See Yesil v. Reno,* 92 N.Y.2d 455, 682 N.Y.S.2d 663, 705 N.E.2d 655 (1998). Before the Second Circuit could then decide whether the Attorney General was a proper respondent, the parties reached an agreement and the government's motion to withdraw the appeal with prejudice subject to the stipulated agreements was granted. *See Yesil v. Reno,* 175 F.3d 287 (2d Cir.1999).

Lower federal courts, when they have reached it, have split on the question. *Compare, e.g., Pottinger v. Reno,* 51 F.Supp.2d 349, 357 (E.D.N.Y.1999) (Attorney General and INS District Director in New Orleans custodians for habeas purposes); *Mojica v. Reno,* 970 F.Supp. 130, 166–67 (E.D.N.Y.1997) (Attorney General, Commissioner of the INS, INS District Director in New Orleans, and New York District Director custodians for habeas purposes) *with Wang v. Reno,* 862 F.Supp. 801, 812–13 (E.D.N.Y.1994) (neither Attorney General nor INS District Director in New Orleans custodians); *Chukwurah v. United States,* 813 F.Supp. 161, 168 (E.D.N.Y.1993) (custodian for habeas purposes the warden of the detention facility in Colorado where petitioner was detained).

The Attorney General has ultimate control over the custody of a non-citizen in deportation proceedings. The INS is an agency within the Department of Justice overseen by the Attorney General. *But see* Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2135 (enacted Nov. 25, 2002) (transferring the INS to the Department of Homeland Security and separating law enforcement and services functions). While the Attorney General may have delegated authority for physical custody of immigrants and determinations regarding that detention to the INS, he or she retains the duty to ensure that such authority is carried out responsibly and lawfully and "the power to direct her sub-

ordinates to carry out any order directed to her to produce or release the petitioner." *Nwankwo,* 828 F.Supp. at 174.

If the Attorney General were not an appropriate respondent, non-citizens would effectively be limited to naming the individual directly in control of their confinement as custodian and filing their habeas petition in the district in which they are detained. *Mojica* noted an important consequence of this position:

> [W]ere the government correct that a habeas petition may be heard only where the petitioner is detained, then the Attorney General "could seriously undermine the remedy of habeas corpus by detaining illegally a large group of persons in one facility so that the resulting torrent of habeas corpus petitions would overwhelm" the local court.

970 F.Supp. at 167 (quoting *Nwankwo v. Reno,* 828 F.Supp. 171, 175 (E.D.N.Y. 1993)) (internal quotation omitted). If limited to bringing a habeas petition in the district where they are detained nothing would preclude or limit the power of the Attorney General or INS to shift detained non-citizens all over the country. Such shifting, whether by design or without intention to harm, could not only delay petitions by overwhelming local courts but also force petitions to be heard in a forum where the law is most in accord with the government's views and policy. There are no allegations or indications that this has occurred in the instant case, but it certainly is a factor to consider in determining whether the Attorney General is an appropriate respondent. By contrast, traditional venue considerations would prevent non-citizens from forum shopping.

 There is personal jurisdiction over the Attorney General in New York, since he or she regularly transacts business in New York in an official capacity. *See Braden v. 30th Judicial Circuit Court of Ken-*

*tucky,* 410 U.S. 484, 495, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (court has personal jurisdiction in habeas case so long as custodian can be reached by service of process); Fed.R.Civ.P. 4(e) (district court may apply rules for service of process of the state in which it sits); N.Y. C.P.L.R. 302 (personal jurisdiction over non-domiciliary who regularly transacts business in the state); *see also Henderson v. INS,* 157 F.3d 106 (2d Cir.1998): *Nwankwo,* 828 F.Supp. at 175–76.

### 4. Scope of Habeas Review

■ As already noted, AEDPA and IIRIRA did not repeal habeas jurisdiction pursuant to section 2241 of title 28 of the United States Code. Federal courts reviewing habeas petitions do have subject matter jurisdiction over "purely legal statutory and constitutional claims." *Calcano–Martinez,* 232 F.3d at 342; *see also St. Cyr,* 533 U.S. at 314 n. 38, 121 S.Ct. 2271; *Henderson,* 157 F.3d at 122. The Court of Appeals for the Second Circuit has held, however, that the scope of habeas review does not extend to challenges to factual or discretionary determinations made by immigration judges or the BIA. *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001). *But see Zadvydas,* 533 U.S. at 699, 121 S.Ct. 2491 (federal courts have the authority to review an immigrant's petition challenging the reasonableness of continued detention beyond the 90 day statutory removal period even though the decision on whether to continue to detain is entrusted by 8 U.S.C. § 1231(a)(6) to the discretion of the attorney general).

■ Decisions regarding a change in venue in immigration proceedings conducted under the auspices of the Executive Office of Immigration Review ("EOIR") are discretionary. *Lovell v. INS,* 52 F.3d 458, 460 (2d Cir.1995). Assuming that the "charging document" in Mr. So's case was filed with the immigration court in Oak-dale, Louisiana, jurisdiction over Mr. So's administrative immigration proceedings vested with that immigration court. 8 C.F.R. § 3.14(a). Venue then also lies there, but may be changed by the immigration judge upon motion and for "good cause." 8 C.F.R. § 3.20(a), (b). What constitutes good cause in any given case is a fact-specific determination made by the immigration judge in an exercise of his or her discretion taking into consideration "such factors as administrative convenience, the alien's residence, the location of witnesses, evidence and counsel, expeditious treatment of the case, and the cost of transporting witnesses and evidence to a new location." *Lovell,* 52 F.3d at 460; *see also In re Rahman,* 20 I. & N. Dec. 480 (BIA 1992). While a decision on change in venue has important implications for an immigrant and can affect in numerous ways the outcome of the removal proceedings, review by the federal courts would require the sort of "fact-intensive" "reassessment of the evidence" that is not contemplated by the habeas corpus statute. *Sol,* 274 F.3d at 651; *see also* 28 U.S.C. § 2241(c)(3) (2002).

■ The denial of an application for relief under section 212(c) after a full hearing on the merits of that application is also a discretionary decision by the immigration judge and the BIA. Despite the amendments to the Immigration and Nationality Act ("INA") that eliminated section 212(c) relief from deportation, a section 212(c) hearing before an immigration judge "remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for 212(c) relief at the time of their plea under the law then in effect." *St. Cyr,* 533 U.S. at 326, 121 S.Ct. 2271. The decision of whether or not to grant relief under section 212(c) remains discretionary. An

Immigration Judge will "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf." *In re Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978). The subject matter jurisdiction of a federal court reviewing a habeas decision does not extend to reviewing an immigration judge's discretionary denial of such relief. *Sol*, 274 F.3d at 651–52.

### B. Application of Law to Facts

#### 1. Petitioner's Detention

The question of the lawfulness of Mr. So's continued detention is moot. If Mr. So were still in the physical custody of the INS, the lawfulness of his continued detention would present a substantial question for this court to consider. At the time of his deportation in December 2001, Mr. So had been detained by the INS for almost five years following completion of the three years served for his criminal sentence. Had Mr. So not been deported, he today would have been in the custody of the INS for close to six years, twice the term of his criminal incarceration.

#### 2. Venue in Habeas Proceedings

 The government argues that traditional venue considerations do not favor the Eastern District of New York on the grounds that none of the material events in the case took place here, petitioner was not a resident here, petitioner was detained in Louisiana, no pertinent witnesses or records could be found here, and it was inconvenient for both petitioner and respondent. By contrast, Mr. So's underlying criminal activity and conviction (and all proceedings related to that conviction with the exception of the immigration proceedings before the immigration judge and the BIA) took place in the Eastern District of New York. The BIA held that Second Circuit law governed as the law of the case,

making the Eastern District of New York more familiar with the applicable law than would be a court in Louisiana. To transfer the case to Louisiana now would effect a substantial waste of judicial resources, both in this circuit where Mr. So's case has been adjudicated since his first habeas petition was filed here in 1997, and in Louisiana, where the courts would have to start from scratch despite the reality that Mr. So has been deported. This court has a strong interest in hearing Mr. So's case, both to avoid such a waste of judicial resources and to protect the rights of a longtime resident of New York.

Mr. So worked and lived with his family in New York prior to his criminal conviction. Mr. So's family remained in New York during the term of Mr. So's criminal incarceration and his immigration proceedings, and Mr. So returned here to live with and support them when he was released on bond pending a final decision on his case by the BIA. Members of his immediate and extended family continue to reside in New York. Witnesses and records are more available here than in Louisiana. Mr. So at some point had access to counsel in New York. He had no connection to Louisiana prior to being sent to the INS detention facility in Oakdale.

Any inconvenience to petitioner or to respondent caused by litigating the case in the Eastern District of New York is negligible. There is no reason to believe that the United States attorney in this district is less capable of defending against the petition than is the United States attorney in Louisiana.

Traditional venue considerations weigh in favor of the Eastern District of New York as the venue in which Mr. So's habeas petition should be heard. To limit a petitioner to bringing an action in the judicial district in which he or she is (or was) detained would allow the Attorney General

and INS virtually unfettered authority over the jurisdiction in which habeas petitions must be brought. Such forced choice of forum can have a substantial adverse impact on a petitioner's rights. *See Mojica*, 970 F.Supp. at 168.

### 3. Attorney General as Respondent

■ The Attorney General is Mr. So's ultimate custodian and therefore an appropriate respondent in a habeas petition. There is personal jurisdiction over the Attorney General in the Eastern District of New York.

To hold otherwise would effectively and inappropriately limit Mr. So to filing a petition in the jurisdiction in which he is detained despite Mr. So's lack of any connection to Louisiana other than the fact that he was detained there for some years. The reality is that venue and virtually all other considerations militate in favor of adjudicating Mr. So's habeas corpus petition in New York.

### 4. Scope of Habeas Review

■ Mr. So challenges the BIA's affirmance of the immigration judge's decisions rejecting his motion for a change in venue and denying his application for relief from deportation under former section 212(c). These are discretionary decisions of the type that are outside the subject matter jurisdiction of federal courts reviewing habeas petitions brought by immigrants challenging a final order of deportation. This court cannot consider Mr. So's challenges to them.

### V. Conclusion

Since Mr. So is in custody within the meaning of the habeas corpus statute and he suffers continuing injury that could be remedied by granting the relief requested, his petition is arguably not moot. The questions posed by the court of appeals are answered as follows: (1) venue in the Eastern District of New York is proper and transfer to Louisiana would be both unwarranted and a waste of judicial resources; (2) the Attorney General is petitioner's custodian and is therefore an appropriate respondent for habeas corpus purposes; (3) the question of the lawfulness of petitioner's detention is moot; and (4) there is no relief within the power of the court to grant Mr. So.

The petition is denied.

A certificate of appealability is granted with respect to findings (1), (2), (3), and (4) above since the court of appeals, contrary to the district court's conclusion, apparently believed these questions warranted further consideration. Appointed counsel is directed to file a notice of appeal. Since, apparently, the petitioner cannot be located there appears no reason to further burden appointed counsel by requiring her to prosecute the appeal. In view of the petitioner's removal and his unknown whereabouts, this court has exhausted its authority in the matter. None of the parties present appear to have a continuing interest in the matter, raising Article III jurisdictional problems. The government is directed to attempt to serve petitioner with this memorandum, order, and judgment by mail, and to notify the court of appeals that its order on remand has been carried out.

SO ORDERED.